986 P.2d 951
Michael J. CRAIG, Defendant-Appellant,
v.
The PEOPLE of the State of Colorado, Plaintiff-Appellee.
No. 99SA159.
Supreme Court of Colorado, En Banc.
October 4, 1999.
 James O. Simpson, Denver, Colorado, Attorney for Defendant-Appellant.
 Ken Salazar, Attorney General, John Daniel Dailey, Assistant Solicitor General, Julia A. Thomas, Assistant Attorney General, Appellate Division Denver, Colorado, Attorneys for Plaintiff-Appellee.
 David F. Vela, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, Attorneys for Amicus Curiae for the Defendant-Appellant.
 Justice MARTINEZ delivered the Opinion of the Court.
 Michael Craig initiated this appeal following the district court's denial of his Crim. P. 35(c) motion seeking relief from his plea-bargained sentence. We accepted transfer of the matter (along with a similar case)1 from the court of appeals in order to address the relationship among the plea agreement, the advisement, and the mandatory parole requirement set forth in section 18-1-105(1)(a)(V)(A), 6 C.R.S. (1998).
 We hold that issues of mandatory parole can only render invalid a defendant's waiver of constitutional rights associated with a plea of guilty in two discrete respects. First, if a defendant is explicitly promised a sentence related to mandatory parole which is contrary to the statutes, and such a promise is a material part of the plea agreement, then the defendant's plea is invalid. Such an agreement can never result in a finding of breach and an order of specific enforcement because the courts may not uphold a negotiated plea that has as its object an illegal sentence. Second, a plea that is entered without an adequate advisement of the direct consequence of mandatory parole is constitutionally infirm and subject to withdrawal unless the infirmity is harmless or can be rendered harmless by a modified legal sentence. We also hold that the omission of mandatory parole from the mittimus should be read as imposing mandatory parole and must, therefore, be corrected by the trial court.
 In the instant case, we conclude that Craig was neither offered an improper inducement with regard to mandatory parole, nor inadequately advised as to this consequence of his plea. Accordingly, the post-conviction court correctly denied relief.
 I.
 Following Craig's 1994 arrest on various charges, he and defense counsel entered into plea negotiations with the district attorney. The parties eventually agreed to a proposed disposition and submitted it to the trial court for approval pursuant to Crim. P. 11.
 The trial court conducted a providency hearing, at which time several documents related to the plea were tendered. A "WRITTEN PLEA AGREEMENT" embodied the parties' understanding that, in exchange for the People dismissing a first degree burglary charge (and withdrawing recently filed habitual criminal counts), Craig would enter a plea of guilty on the remaining charges of second degree burglary and second degree assault, both class four felonies. The written agreement also indicated that the parties had "stipulated to the following sentence concessions: stipulated 5 year DOC [Department of Corrections], both cases, concurrent, consecutive [to] present sentence."2 (Emphasis added.)
 Another form, entitled "REQUEST TO PLEAD GUILTY (Rule 11 Advisement)" was also completed. By his signature on this document (and his initials on each paragraph), Craig indicated his awareness of several important principles. In particular, paragraph fourteen of the advisement form provided: "I know that I could be required to serve up to five years on parole after serving a sentence." (Emphasis added.)
 Finally, a document entitled "STATEMENT OF COUNSEL" was completed by Craig's attorney, and included the following certification:
I have fully discussed with the Defendant and am satisfied the Defendant understands each and every element of the charge(s) to which he/she is pleading guilty as well as the possible sentence for the conviction(s).
 (Emphasis added.) During the course of the providency hearing, the trial court advised Craig on several topics. He was informed of the constitutional rights associated with trial that would be waived as a result of the plea disposition and was told, in detail, exactly what the prosecutor would be required to prove in order to obtain convictions at a trial. In addition, the court confirmed that Craig had reviewed all of the plea documents with his attorney, and determined that Craig had no questions regarding the proposed plea or any of the matters indicated in the forms he had completed. The court noted that the proposed plea disposition was for a "stipulated five year DOC sentence on both cases, with those to run concurrent," and further explained that "there's three years of mandatory parole on a Class Four Felony." Craig indicated that he understood the penalties and wished to proceed. The trial court accepted the guilty pleas and made written findings that they were knowingly, voluntarily and intelligently entered. Craig was sentenced to five years in the Department of Corrections on each count, with the sentences to run concurrently as per the agreement of the parties. However, the trial court did not include a notation on the mittimus reflecting the mandatory parole period required by section 18-1-105(1)(a)(V)(A).
 On June 17, 1997, Craig filed a Crim. P. 35(c) motion for post-conviction relief claiming that he had not been advised of the mandatory parole requirement "while engaging in plea negotiations, on his written plea agreement, or during his providency and sentencing hearing." Asserting that he would not have pleaded guilty if he had known of the additional mandatory parole period, Craig claimed that his plea was "not voluntarily and intelligently given and should not have been accepted by the court." In addition, Craig complained that "[t]he term of mandatory parole imposed upon defendant exceeds his maximum, under the plea agreement, of (5) [f]ive years."
 Following the post-conviction court's denial of the motion, Craig initiated this appeal. On its own motion, and pursuant to section 13-4-109, 5 C.R.S. (1998) and C.A.R. 50(b), the court of appeals requested that we accept transfer of the dispute prior to decision. Because of the number of similar cases now pending in the court of appeals and in post-conviction review proceedings in the sentencing courts, we entered an order accepting transfer of the case. We conclude that the post-conviction motion was properly denied.
 II.
 Beginning on July 1, 1993, all class two through six felony convictions in Colorado involving a sentence to a term of imprisonment have been subject to an additional period of "mandatory parole." See § 18-1-105(1)(a)(V)(A). An offender is subject to mandatory parole following discharge from imprisonment regardless of whether such discharge is through some form of early release under the auspices of the state board of parole, or as the result of the offender having served the entire period of confinement specified in his or her sentence. See § 18-1-105(1)(a)(V)(B).3 The exact length of the additional parole term is specified by reference to the class of felony for which the defendant was convicted. See § 18-1-105(1)(a)(V)(A). This period is mandatory, in that it may not be waived by the offender or waived or suspended by the trial court. See § 18-1-105(1)(a)(V)(B). However, "The state board of parole may discharge the offender at any time during the parole period upon a determination that the offender has been sufficiently rehabilitated and reintegrated into society and can no longer benefit from parole supervision." § 17-22.5-403(8), 6 C.R.S. (1998); see also § 18-1-105(1)(a)(V)(B).
 Offenders who enter into plea dispositions but later challenge the mandatory parole requirement often seek relief through post-conviction proceedings. A great deal of confusion has arisen with regard to the proper approach to resolving these cases. We begin our analysis by first considering, and then rejecting, the view that a plea agreement contemplating an illegal sentence involving mandatory parole may be specifically enforced notwithstanding the illegality of the agreement as originally conceived. We then turn to what, in our view, is the proper analytical framework for resolving this type of case. Simply put, the courts must determine whether the waiver of constitutional rights associated with the defendant's entrance of a negotiated plea was rendered unknowing, involuntary or unintelligent by either (1) the improper inducement of a plea agreement to alter or to eliminate the term of mandatory parole; or (2) an insufficient advisement on mandatory parole in light of its status as a direct consequence of the guilty plea. Finding neither flaw in this case, we hold that the post-conviction court properly denied relief.
 A.
 The courts have long recognized that, "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). We have recently reaffirmed this principle. See St. James v. People, 948 P.2d 1028, 1032 (Colo.1997). If a breach is established, the appropriate remedy will generally be to give effect to the defendant's legitimate expectations arising out of the express promises made by the government. See St. James, 948 P.2d at 1033; People v. Macrander, 756 P.2d 356, 361 (Colo.1988); People v. Fisher, 657 P.2d 922, 931 (Colo.1983).
 However, because mandatory parole is a statutorily prescribed sentence component that attaches automatically to any sentence involving imprisonment, a plea agreement purporting to alter this requirement represents a special case. It is important to recognize that the provisions governing plea dispositions provide the prosecutor with limited authority to: "make or not to oppose favorable recommendations concerning the sentence to be imposed if the defendant enters a plea of guilty or nolo contendere." Crim. P. 11(f)(2)(I); see also § 16-7-301(2)(b), 6 C.R.S. (1998). In this context, then, the concessions specified in any particular plea agreement must be understood as speaking only to the discretionary aspects of sentencing where such recommendations actually could be entertained by the trial court. Because neither the prosecutor nor the trial court have authority to modify or waive the mandatory parole period provided by section 18-1-105(1)(a)(V)(A), this topic is not a permissible subject of plea negotiations. Nor is it a matter on which the prosecutor can be expected to express an opinion. Indeed, when mandatory parole is required by the statute, a recommendation from the prosecutor on this topic is either a meaningless recommendation that the law be followed or an extraordinary recommendation that the law be ignored.
 When the parties attempt to fashion a sentence that is itself contrary to law, the resulting illegality is not subject to specific enforcement. Rather, assuming that the trial court erroneously approves of such an illegal bargain, our decision in Chae v. People, 780 P.2d 481, 485-86 (Colo.1989), requires the plea to be regarded as invalid and involuntary. In Chae, the prosecution and defense entered into a plea agreement that called for the trial court to illegally suspend the defendant's prison sentence. See id. Because the illegal sentence was an integral part of the plea agreement entered in that case, we concluded that the plea itself could not be upheld. As we noted there:
[W]hen a defendant enters into a plea agreement that includes as a material element a recommendation for an illegal sentence and the illegal sentence is in fact imposed on the defendant, the guilty plea is invalid and must be vacated because the basis on which the defendant entered the plea included the impermissible inducement of an illegal sentence.
 Id. at 486 (emphasis added). We ultimately held that the courts cannot uphold a plea bargain that calls for an illegal sentence, and thus, the only appropriate remedy would be to allow the defendant to withdraw his plea and plead anew. See id. at 487.4
 In the context of mandatory parole, any plea agreement purporting to eliminate, waive, modify or direct the trial court's application of parole in a way not available under the sentencing law would call for an illegal sentence of the sort rejected in Chae. We therefore find fault with Craig's reliance on People v. Sandoval, 809 P.2d 1058 (Colo.App. 1990), for the proposition that a defendant may obtain specific enforcement approximating the terms of the illegal bargain.5 It is true that the Sandoval court found the application of mandatory parole to be inconsistent with the terms of a defendant's plea agreement, and ordered a remedy in the nature of specific enforcement. However, the court of appeals panel that decided Sandoval does not appear to have considered the import of our prior holding in Chae, and in particular our observation that "a later sentence imposed within statutory guidelines cannot correct" the flaw resulting from the improper inducement. 780 P.2d at 487 n. 12. Significantly, the Sandoval court seems to have arrived at its conclusion by mixing the analysis of (1) the sufficiency of the advisement associated with a plea agreement, a separate topic we consider below; with (2) the validity and enforceability of the promises contained in the plea agreement itself. See Sandoval, 809 P.2d at 1058-59. We conclude that Sandoval was wrongly decided and we overrule it. We also disapprove of cases which follow Sandoval and rely upon its mixed analysis.6 There cannot be a breach of a plea agreement when the agreement itself cannot be recognized because it contains, as an integral component, an illegal promise that materially induced the defendant to plead guilty. See Chae, 780 P.2d at 486.
 B.
 In light of our conclusion above, it should be clear that the courts will not reach the question of whether the imposition of mandatory parole pursuant to section 18-1-105(1)(a)(V)(A) runs counter to a promise contained in a defendant's plea agreement. Instead, when a promise in a plea agreement purports to touch upon mandatory parole, the reviewing courts must determine whether the agreement calls for an illegal sentence. If so, and if the improper promise was an integral and material aspect of the agreement, the resulting plea is invalid under Chae. In order to determine whether there was an improper inducement of this sort in the instant case, we turn to our case law guiding the interpretation of the existence and scope of promises alleged to be part of a plea agreement.
 The proper interpretation of a plea agreement is "strictly a question of law." See St. James, 948 P.2d at 1030. As such, "de novo review is the proper standard for interpreting a party's obligation under a plea agreement." Id. at 1031. The question for the courts is whether the interpretation the defendant claims to have taken is a reasonable one. See Macrander, 756 P.2d at 360. This is an objective test. It is not based on the subjective understanding of the defendant, but on the meaning a reasonable person would have attached under the circumstances. See id. ("[W]e focus on the meaning a reasonable person might attach to the language of the agreement."). Our task is not to rewrite the bargain in question, but to interpret it consistently with the reasonable intent of the parties in light of the defendant's right to be treated fairly by the government. See People v. Wilbur, 890 P.2d 113, 117 (Colo.1995).
 However, a plea agreement is more than a mere contract between two parties and "must be attended by constitutional safeguards to ensure that a defendant receives the performance that he is due." People v. McCormick, 859 P.2d 846, 856 (Colo. 1993). Because the defendant's due process rights are at issue, the courts may consider extrinsic evidence as an aid to ascertaining the existence and scope of any promises at issue, even under circumstances where such evidence would not be properly considered in the realm of ordinary civil contracts. See People v. Romero, 745 P.2d 1003, 1010 (Colo. 1987). Indeed, in addition to the relevant written documents, the courts may consider "any oral statements made to the defendant as well as extrinsic evidence relating to the circumstances of the government's dealings with the defendant." Id.
 The trial court advisement associated with acceptance of a plea represents a special type of extrinsic evidence. Although extrinsic matters may be considered even in the absence of ambiguity, consideration of such evidence takes on special significance only where the plea agreement is itself ambiguous. See Romero, 745 P.2d at 1010. We have held that where the parties' bargain is unambiguous in its meaning, however, an inaccurate advisement by the trial court does not have the effect of altering the bargain of the parties. See Wilbur, 890 P.2d at 118-19. For this reason, an advisement might affect the validity of a plea by failing to provide sufficient information (a matter we consider below), but it will not ordinarily alter the promises contained in an unambiguous plea agreement. Only when the court's statements add a term inconsistent with the plea agreement, to which the parties acquiesce, is the unambiguous agreement altered. See, e.g., Benavidez v. People, 986 P.2d 943, at 949, 1999 WL 782057 (Colo. October 4, 1999) (noting that trial court added a new term to the plea agreement when it asserted that the agreed upon five-year cap would apply to both Community Corrections and D.O.C. sentences).
 With all of the above principles in mind, we categorically reject the suggestion that the mere omission of a reference to mandatory parole in the plea agreement requires us to construe the parties' bargain as eliminating or modifying the application of this statutory requirement. Such an interpretation is unreasonable when considered in terms of the context under which plea negotiations take place. The fact that mandatory parole is not a permissible topic for plea negotiations, coupled with the parties' silence on this topic, causes us to reject this approach. We will not presume that the parties intended to defeat a parole term mandated by statute simply because the plea agreement does not mention parole. Therefore, a defendant may not reasonably rely on the mere omission of mandatory parole to demonstrate a promise for an illegal sentence excluding the required period. In the absence of express language by the parties indicating that they have actually agreed to eliminate or circumvent the parole requirement, we will construe the plea agreement to provide for a legal sentence.
 Arguing in the alternative, Craig claims that we should construe the sentence of "5 years D.O.C." specified in the plea documents as actually denoting only two years of imprisonment plus three years of mandatory parole. In this respect, Craig urges that the parties envisioned the term "D.O.C." as denoting an agreement to limit his overall exposure to any form of deprivation of liberty to a period of five years.
 The felony sentencing scheme erected by section 18-1-105 simply does not envision an "overall exposure" sentence; rather, the structure of the statute makes clear that terms of imprisonment and mandatory parole terms are distinct elements of the sentencing regime. It therefore stands to reason that a sentence of "overall exposure" is not authorized under the statute. That notwithstanding, we do not agree with Craig's suggestion that a sentence to "5 years D.O.C." embodies such a promise. Rather, we are of the view that a reasonable person would understand a sentence to the "Department of Corrections" to refer to the imprisonment component of a sentence only and not to include any promises concerning mandatory parole.
 Although basic considerations of fairness require that reasonable ambiguity regarding the scope of a promise made in a plea agreement be resolved in favor of the defendant, see Romero, 745 P.2d at 1010, this does not mean that we are free to read into the agreement a term that lacks evidentiary support in the record. See id. Rather, we will entertain the view suggested by a defendant when it represents a "reasonable alternative interpretation" of the agreement that has a "reasonable foundation in the document itself and in the circumstances surrounding its execution." Id. (emphasis added).
 Consistent with our conclusions above, we do not construe the parties' failure to mention mandatory parole in the written plea agreement as subjecting that document to the alternative interpretation urged by Craig. "Silence does not by itself necessarily create ambiguity" unless that silence involves a matter "naturally within the scope" of the parties' bargain. Cheyenne Mountain Sch. Dist. No. 12 v. Thompson, 861 P.2d 711, 715 (Colo.1993). Because the parties would not ordinarily negotiate and include mandatory parole in their agreement, their silence on this topic simply does not render the agreement ambiguous.
 More fundamentally, however, we believe that an agreement for a sentence to the "D.O.C." clearly indicates that the defendant has bargained for a term of confinement commensurate with the period specified. The Department of Corrections is charged with the management and control of the correctional facilities in this state. See § 17-1-104, 6 C.R.S. (1998); see also § 24-1-128.5(2)(a), 7 C.R.S. (1998). All decisions regarding mandatory parole are, however, left exclusively to the Board of Parole, an entity separate and apart from the Department of Corrections. See § 17-2-201, 6 C.R.S. (1998). Only the Board is empowered by statute to release an offender to mandatory parole before completion of her sentence of imprisonment, see § 18-1-105(1)(a)(V)(D), and only the Board is authorized "to discharge [an] offender at any time during the term of [mandatory] parole." § 18-1-105(1)(a)(V)(B). Because the General Assembly elected not to vest the Department of Corrections with the discretionary authority to either initiate or terminate a mandatory period of parole, we cannot characterize an agreement for a sentence concession of "5 years D.O.C." as encompassing some unstated mixture of prison time and mandatory parole time. To the contrary, our duty to engage in reasonable interpretation requires us to view such language as speaking only to the length of time the parties intend the defendant to be confined in a Department of Corrections facility.7
 Finally, we reject the position of the amicus Public Defender that the trial court's advisement altered the parties' unambiguous agreement. We can find no express promise made by the trial court and adopted by the parties through their silence or express acquiescence. It is urged, however, that the trial court's statement to the effect that it would not be bound by any representations not formalized in the plea documents requires us to conclude that the court promised Craig that any sentence component not specifically listed would be thereby precluded. We reject this view. To the contrary, the court spoke in terms of representations and was indicating that any sentence concessions (i.e., promises) not listed were unenforceable. Thus, the advisement actually supports our view that, absent an express promise regarding mandatory parole, the agreement is not a promise to eliminate or to reduce the mandatory period of parole.
 Because we find the interpretations of the plea agreement proposed by Craig to be unreasonable as a matter of law, we conclude that he was made no promises by the government that would impact the application of mandatory parole as required by section 18-1-105(1)(a)(V)(A). Accordingly, there was not an improper inducement to plead guilty and the plea agreement was not invalid on that basis.
 C.
 Despite the fact that we conclude that the plea agreement does not contain an impermissible inducement related to mandatory parole, there remains a question as to whether Craig was sufficiently advised of the parole requirement to enter a plea with the requisite knowledge of the consequences. We conclude that he was.
 Crim. P. 11 requires that a defendant be advised of, among other things, the "possible penalty or penalties" associated with the entry of a guilty plea. See Crim. P. 11(b)(4). We have construed this requirement as charging the courts with a duty to describe the "direct consequences" of the resulting conviction. See People v. Birdsong, 958 P.2d 1124, 1128 (Colo.1998); People v. Pozo, 746 P.2d 523, 526 (Colo.1987). Where a guilty plea is the result of a plea agreement that includes a proposed sentence stipulation, the trial court must describe not only the penalties that could attach if the case were to go to trial, but also the specific points where the stipulated sentence would differ from this general advisement. See, e.g., People v. Weed, 830 P.2d 1095, 1097-98 (Colo.App. 1991).
 Mandatory parole is a direct consequence of pleading guilty to a charge which subjects a defendant to immediate imprisonment8 because it has an "immediate and largely automatic effect on the range of possible punishment." Birdsong, 958 P.2d at 1128; see also People v. Coleman, 844 P.2d 1215, 1219 (Colo.App.1992).
 A proper advisement is important because the mandatory parole required by section 18-1-105(1)(a)(V)(A) is different from previous types of parole. Unlike traditional discretionary parole, which allows an offender to serve some portion of his or her prison sentence under parole supervision in lieu of imprisonment, mandatory parole is imposed in addition to the imprisonment component of a sentence. Moreover, a violation of the terms of parole can convert the parole term into an additional period of imprisonment of up to the remaining length of the parole period.9 See § 17-22.5-403(8). Given these characteristics, a proper advisement on this topic must indicate that the parole term occurs after, in addition to, or distinct from any period of imprisonment. A proper advisement must also include the length of mandatory parole, although the failure to so advise may be harmless error.10
 However, a proper advisement need not comport with any prescribed ritual or script. See People v. Cushon, 650 P.2d 527, 528 (Colo.1982); People v. Canino, 181 Colo. 207, 211, 508 P.2d 1273, 1275 (1973) ("Our concern ... has always been with reality and not ritual."). The appropriate inquiry is whether the "record as a whole" shows that the defendant was given sufficient notice of the matter in question. People v. District Court, 868 P.2d 400, 403 (Colo.1994). Thus, the analysis of the advisement question may involve consideration of the language of the plea agreement. If there is some showing of an affirmative waiver, "the burden of proof rests with the defendant to show by a preponderance of evidence that his apparent waiver was not effective." People v. Harrington, 179 Colo. 312, 315-16, 500 P.2d 360, 361 (1972); see Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir.1964).
 Although an improper Crim. P. 11 advisement calls into question the knowing, voluntary and intelligent nature of a defendant's plea, the remedy for an oversight by the trial court depends, in part, on the type of information that was not properly conveyed. Where a defendant is not advised of fundamental constitutional rights that he or she would enjoy at a trial, the plea cannot be treated as knowing, voluntary and intelligent and must be allowed to be withdrawn. See Harrington, 179 Colo. at 316, 500 P.2d at 361-62. Similarly, where the trial court does not adequately explain the elements of the crime (including the requisite mental state) that would have to be proven at trial, the resulting conviction is not constitutionally supportable. See Lacy v. People, 775 P.2d 1, 4-5 (Colo.1989).
 However, we have held that the failure to advise of the "correct and complete penalty" may be rendered harmless by imposing a modified sentence that removes the burden of the undisclosed consequence. See People v. Baca, 179 Colo. 156, 158, 499 P.2d 317, 318 (1972). In the mandatory parole context, then, withdrawal is not required if the defendant can be given an alternative sentence in which the number of years of imprisonment is reduced by such an extent as to remove the extra onus of the undisclosed or improperly described parole term. Such a modification cannot be imposed, however, if the result would be an illegal sentence. Thus, withdrawal of the plea is the only remedy where elimination of the burden of the undisclosed consequence would require elimination of all or part of the required mandatory parole period, or would reduce the number of years of imprisonment below the presumptive range specified in the statute.11
 While modification may be necessary to repair the defects that necessarily attend an inadequate advisement, we hasten to add that there will likely be occasions where an error at advisement may be deemed harmless ab initio. For instance, in cases where the defendant is alerted as to the full range of penalties to which he could legitimately be exposed, but is not apprised of the consequence of mandatory parole, harmless error results when the term of imprisonment, combined with the mandatory period of parole, falls within the range of sentence that the defendant was at risk of receiving. While the failure to advise a defendant of both the fact and length of mandatory parole constitutes error on the part of the trial court, a defendant, having been notified of the maximum available penalties, is not entitled to reformation of a combined sentence of imprisonment and mandatory parole that falls within the range of penalties he was at risk of receiving.12 Thus, in the circumstances described above, a reviewing court need not decide whether a defendant's sentence must be reformed in order to render harmless the erroneous advisement. In such cases, the error already will have been rendered harmless by virtue of the fact that the combined sentence of imprisonment and mandatory parole imposed by the trial court neither exceeds nor substantially departs from the range of penalties set forth in its earlier advisement and which the defendant was at risk of receiving. Cf. Baca, 179 Colo. at 158,499 P.2d at 318 (deeming harmless trial court's failure to advise as to the correct and complete penalty because sentence finally imposed was in conformity with original, albeit defective, advisement).
 Viewing the record as a whole, we are satisfied that Craig received an extensive and meticulous advisement that adequately covered the mandatory parole requirement. Indeed, Craig personally acknowledged, by initialing paragraph fourteen of the rule 11 advisement form, that he could be "required to serve up to five years of parole after serving a sentence." He was advised by the trial court that class four felonies are subject to "three years of mandatory parole." Directly following this advisement he was asked whether he understood the penalties, and indicated that he did. Defense counsel certified that Craig had been advised of the "possible penalties" and was offering the pleas "freely, knowingly, and voluntarily." See People v. Cabral, 698 P.2d 234, 238 (Colo. 1985) (in-court attestation by defense counsel regarding voluntary nature of plea considered significant). In addition, Craig confirmed that he had conferred with counsel while reviewing the plea documents and considered the services of counsel to be satisfactory. See People v. Orona, 907 P.2d 659, 666-667 (Colo.App.1995) ("It is significant that defendant was represented by counsel prior to and during the proceeding and that defendant acknowledged that his attorney discussed the charge and the effect of a guilty plea with him."). Finally, the trial court — having had the opportunity to measure the demeanor, body language, and level of comprehension exhibited by Craig at the providency hearing — made a finding that Craig understood the penalties associated with his case and was entering the pleas voluntarily with knowledge of the consequences.
 Despite the extensive indicia of a proper advisement, Craig contends that his plea was nevertheless defective. Because Craig did not raise the specific theories upon which he now relies in his post-conviction motion,13 they are not properly before the appellate courts. See People v. Simms, 185 Colo. 214, 218, 523 P.2d 463, 465 (1974); see also People v. Goldman, 923 P.2d 374, 375 (Colo.App.1996). Nevertheless, we elect to address these points in order to provide some guidance in this realm.
 Craig first claims that the Crim. P. 11 advisement form did not provide sufficient notice of the mandatory parole requirement because it informed him only that he "could" be subject to parole. We are not persuaded. This form indicated that Craig "could be required to serve up to five years on parole after serving a sentence." We believe that the essential character of the mandatory parole period required by section 18-1-105(1)(a)(V)(A) was clearly described. Not only was Craig put on notice that a parole term was a potential component of his sentence, but this language also explained that the parole period: (1) begins after any term of imprisonment; and (2) could be of up to five years in duration. Viewed in context, use of the word "could" did not render this advisement defective. In fact, because the board of parole may release an offender from parole supervision at any time upon a finding that he or she has been sufficiently rehabilitated, see §§ 17-22.5-403(8) & 18-1-105(1)(a)(V)(B), the phrase "could be required to serve" was actually quite appropriate.
 Craig next argues that the trial court's advice that "there's three years of mandatory parole on a Class Four Felony," should be understood as speaking only in terms of the general possibilities for the crimes in question, because this phrase was not repeated when the court discussed the sentence concessions agreed to by the parties. We reject this characterization. The trial court conducted an appropriate advisement by outlining all of the possible consequences of the guilty plea (including mandatory parole), and separately highlighting the single area — the term of imprisonment to the D.O.C. — where the parties had stipulated to a result that differed from the general advisement. Because mandatory parole applies equally to stipulated sentences to the D.O.C. as well as those that are not stipulated, it is not necessary for a trial court to be repetitive on this point.
 In short, we are not persuaded by Craig's attempts to characterize the record as containing an insufficient advisement. When asked if he understood the penalties at the providency hearing, Craig indicated that he did. At no time did he request clarification from the trial court or suggest that he believed the mandatory parole period would be inapplicable to his case. His Crim. P. 35(c) motion did not request a hearing and offered no evidence to establish why his responses at the providency hearing did not accurately reflect an intelligent waiver of his rights.14 Under such circumstances, Craig did not meet his burden of establishing by a preponderance of the evidence that the affirmative waiver contained in the record was ineffective. See Harrington, 179 Colo. at 315-16, 500 P.2d at 361. Accordingly, Craig is not entitled to relief on this claim.
 D.
 In light of our conclusions above, we next turn our attention to the fact that the mittimus in this case does not reflect the required mandatory parole period. Because the parole term required by section 18-1-105(1)(a)(V)(A) may not be waived, the trial court's failure to specify this sentence component in the mittimus was error, though likely due to a mere oversight. We conclude that the error can and must be corrected by the sentencing court. See Garcia v. United States, 492 F.2d 395, 398 (10th Cir.) (once trial court made aware that it had inadvertently omitted a required "special parole" term, it had a duty to comply with the statute and correct the sentence; such correction did not violate constitutional protections), cert. denied, 419 U.S. 897, 95 S.Ct. 178, 42 L.Ed.2d 142 (1974). Further, we observe that a mittimus that is silent as to whether the mandatory period of parole is imposed should be read to include the imposition of this requirement since it must be added whenever the error is noticed.15 Accordingly, the trial court shall amend Craig's mittimus to reflect the mandatory parole period.
 III.
 In sum, we hold that a plea agreement to reduce or modify the statutorily mandated period of parole calls for an illegal sentence. It is not possible for the imposition of mandatory parole to result in a breach of a plea agreement, because such an agreement must be viewed as an improper inducement for the plea of guilty. If a plea was actually induced by such a promise, the defendant must be given the opportunity to withdraw the plea. However, an agreement that is silent as to parole should not be construed as containing a promise to eliminate or reduce the mandatory period of parole.
 We further hold that mandatory parole is a direct consequence of a plea that results in a sentence to imprisonment, and that a defendant must be advised of the mandatory parole and the length of that parole. The failure to properly advise of the term of mandatory parole is harmless if the length of parole and imprisonment together does not exceed the total term of imprisonment of which the defendant was advised and risked receiving. A sentence may be modified, within the statutorily permitted range, to render such error harmless.
 Finally, we hold that a mittimus that does not specify the mandatory parole period should be read as including the appropriate mandatory parole period and must be corrected.
 IV.
 Here, we find that Craig was not offered a sentence with an altered mandatory parole term, and therefore his plea was not invalid on that basis. We conclude that Craig was sufficiently appraised of the mandatory parole requirement to enter a plea with the requisite knowledge of this consequence. Finally, the mittimus in this case, which does not specify the mandatory parole period, should be read as including the appropriate mandatory parole period and we direct the trial court to correct the mittimus by including the period of mandatory parole. The judgment of the district court denying relief is affirmed.
 1. The companion case is Benavidez v. People, No. 98SA160, 986 P.2d 943, 1999 WL 782057 (Colo. October 4, 1999).
 2. The "present sentence" described in the written plea agreement referred to concurrent terms of imprisonment the defendant was already serving due to unrelated convictions in Jefferson County and Adams County.
 3. This is a departure from the historical understanding of "parole" as a privilege allowing an inmate to exchange a certain portion of his or her prison term for a period of non-imprisonment custody. See People v. Hunter, 738 P.2d 20, 22 (Colo.App.1986) (interpreting traditional parole rubric as granting an inmate the "special privilege to be outside the walls of the institution while serving his sentence"), aff'd on other grounds, 757 P.2d 631 (Colo.1988). Now, even a prisoner who serves every single day of his or her prison sentence must remain subject to the conditions of parole for the additional mandatory period.
 4. The rule from Chae applies where the illegal promise in question was itself a material inducement for the defendant to plead guilty. See 780 P.2d at 486 (illegal term was "material element" of bargain). This will almost always be the case where, as with mandatory parole or the illegal suspension of a prison sentence considered in Chae, the illegal bargain relates directly to the personal, physical liberty of the defendant. Where the circumstances differ — i.e., where the illegality does not so significantly implicate a defendant's freedom — it may not be necessary to vacate the plea and allow the defendant to plead anew. Similarly, there may be a situation outside of the mandatory parole context where the government would be estopped from raising the illegality of the parties' bargain. See Fisher, 657 P.2d at 926 (discussing Palermo v. Warden, Green Haven State Prison, 545 F.2d 286, 296 (2nd Cir. 1976)). Because such a case is not before us today, we need not evaluate the existence or the bounds of a potential exception to Chae.
 5. We have once before been asked to consider the propriety of the Sandoval decision, but were unable to do so for procedural reasons. See Bullard v. Department of Corrections, 949 P.2d 999, 1002 (Colo.1997). In Bullard, the post-conviction court relied on Sandoval to order the defendant discharged from imprisonment because his D.O.C. sentence included the parole period. The People, however, had not appealed this order. The matter was before us on a writ of mandamus because the Department of Corrections refused to follow the judgment of the post-conviction court. See id. Thus, we were without jurisdiction to review the post-conviction court's actions. As our pronouncement today makes clear, if we had enjoyed jurisdiction to review the order in Bullard, we would have overruled Sandoval and reversed the trial court.
 6. We have announced today that, in the following cases which rely upon the Sandoval analysis, we grant certiorari, vacate the judgment of the court of appeals, and remand to the court of appeals for reconsideration in light of Craig and Benavidez: People v. Espinoza, No. 99SC432 (Colo. filed June 4, 1999); and, People v. Jones, No. 99SC332 (Colo. filed May 14, 1999).
 7. We recognize that we have held, in other contexts, that parole and imprisonment both constitute "legal custody" for certain purposes. See, e.g., People v. Davis, 794 P.2d 159, 180-181 (Colo.1990) (death penalty aggravator that defendant was "under sentence of imprisonment" at time crime committed includes period of parole); People v. Campbell, 742 P.2d 302, 309 (Colo. 1987) (parolee characterized in "legal custody" for purposes of Uniform Mandatory Disposition of Detainers Act). These holdings do not, in our view, alter the reasonable expectations of parties negotiating a plea agreement. Mandatory parole simply is not a proper subject of negotiation. Accordingly, we will not presume that the parties intended to speak to this topic unless the record clearly indicates otherwise.
 8. As we explain today in Benavidez, parole is not a direct consequence of the plea where a defendant is subject to sentences to probation or community corrections, but not prison. See 986 P.2d at 950.
 9. Although the mandatory parole requirement is itself a direct consequence of the guilty plea, the potential for transformation of the mandatory period into additional prison time is not an immediate and automatic result of pleading guilty. Rather, such an outcome requires an affirmative action on the part of the offender — i.e., a parole violation — and is therefore a collateral consequence of the plea which need not be described at the providency hearing. See Birdsong, 958 P.2d at 1128.
 10. We acknowledge that our decision in People v. District Court, 868 P.2d 400, 405 (Colo.1994), stated that a defendant need not be advised of the length of a parole term in order to enter a valid plea. However, that case concerned discretionary parole while our pronouncement today speaks to the mandatory variety required by section 18-1-105(1)(a)(V)(A).
 11. In this respect, we observe that it would not be proper to re-sentence a defendant in such a way that the revised term of imprisonment falls outside of the ordinary presumptive range unless the original sentencing court had made findings of extraordinary circumstances sufficient to support such a deviation.
 12. In People v. Tyus, 776 P.2d 1143 (Colo.App. 1989), the court of appeals held that reversible error does not occur when a trial court fails to advise a defendant of mandatory parole, provided that the sentence actually imposed is less than the maximum that the defendant was advised he could receive. We agree. However, Tyus should not be read, and we do not understand it to mean, that the failure to advise of the fact and length of a mandatory parole term is not error or that such a failure will not constitute reversible error under some circumstances.
 13. Craig's post-conviction motion claimed only that he had not been advised of mandatory parole at all. In support of this notion, Craig relied on the absence of a reference to mandatory parole in his plea agreement document, but apparently ignored both the advisement on this subject in paragraph fourteen of the Crim. P. 11 advisement and the trial court's oral advisement pertaining to the same at the providency hearing.
 14. In fact, Craig stated that it was not necessary for him to appear before the post-conviction court, and he specifically requested that he not be ordered to appear.
 15. Although we conclude that a mittimus that is wholly silent as to the mandatory parole period must be read to include this requirement, it does not follow that a mittimus or judgment which specifically addresses mandatory parole may be disregarded by the Department of Corrections even if it is erroneous. See Bullard, 949 P.2d at 1002; Meredith v. Zavaras, 954 P.2d 597, 603 (Colo.1998).