The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Phillip J. PRIESTER, Defendant–
Appellant.

No. 98CA1650.

Colorado Court of Appeals,
Div. V.

Jan. 20, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Conrad R. Lattes, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Karen A. Chaney, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Phillip J. Priester, appeals from the trial court's order denying his motion for post-conviction relief pursuant to Crim. P. 35(c). We affirm and remand for correction of the mittimus.

Pursuant to a consolidated plea agreement in three trial court cases, defendant pleaded guilty to second degree assault and attempted first degree assault, both class four felonies, and a misdemeanor driving offense. In exchange for his guilty plea, the People dismissed the remaining charge against him in all three cases as well as misdemeanor charges pending against him in several county court cases. In addition, the People stipulated that defendant would be sentenced to 12 years in the Department of Corrections (DOC).

The written plea agreement, which defendant signed, set forth the parties' stipulation that he would be "sentenced to DOC for a period of twelve years." The agreement specifically advised defendant that, for his felony convictions, he would be sentenced to the "Department of Corrections for a definite term . . . plus a period of parole." By signing the written agreement, defendant acknowledged that "other than what is actually stated in this agreement," no promises had been made to him to secure his plea. He further indicated that he understood that the court would "not be bound by any promises or representations made" to him regarding the penalty to be imposed "unless written down as part of this agreement."

The written agreement also includes a certification by defendant's counsel that he had reviewed the plea agreement with defendant "in its entirety, discussing and, if necessary, explaining in detail all matters referred to in the agreement."

During the providency hearing, defendant confirmed that he had read the written plea agreement and that he understood it. He assured the court that he had discussed the agreement with his attorney, and declined an opportunity to take additional time to discuss the terms of the plea agreement with counsel before entering his plea.

With respect to sentencing, counsel explained that the parties had stipulated to a 12–year sentence. Defendant confirmed that no promises had been made to him other than the stipulated DOC sentence provided for in the written plea agreement. The court then advised defendant of the range of prison sentences that could otherwise be imposed and expressly indicated that he would be sentenced to the DOC "plus a period of parole." When the court asked defendant on two separate occasions whether he had any questions about the sentencing consequences of his plea, defendant responded that he did not, and he did not ask any questions regarding the application of the parole period to his sentence.

The court then accepted defendant's plea as knowingly, voluntarily, and intelligently entered and, in accordance with the terms of the plea agreement, sentenced him to 12 years in the DOC. The court neglected to indicate on the mittimuses that defendant would also be required to serve a mandatory three-year period of parole pursuant to § 18–1–105(1)(a)(V)(A), C.R.S.1999.

Defendant, acting *pro se,* thereafter filed a series of Crim. P. 35(c) motions. In the motion at issue here, defendant claimed that his plea agreement provided for a stipulated 12–year sentence, including the 3–year mandatory parole period, and that he was not advised that he would be required to serve the parole period after completing his prison sentence. He claimed that, because the 12–year prison sentence plus the 3–year mandatory parole period resulted in an aggregate sentence of 15 years, his sentence violated the terms of his plea agreement. Relying on *People v. Sandoval,* 809 P.2d 1058 (Colo.App. 1990), defendant claimed that he was entitled to specific performance of the plea agreement as he understood it, and requested that his prison sentence be reduced to 9 years so that his sentence, including the parole period, totals 12 years.

The court denied the motion without holding a hearing.

### I.

We reject the People's claims, both raised for the first time on appeal, that the appeal should be dismissed because defendant's motion was time barred under § 16–5–402, C.R.S.1999, and that the trial court should have denied the motion as successive.

### A.

There is no evidence in the record that the People or the court raised the issue of the time bar in the trial court.

In May 1998 the General Assembly amended § 16–5–402 to include the following provision:

> If an appellate court can determine on the face of the motion, files, and record in a case that a collateral attack is outside the time limits specified in subsection (1) of this section, the appellate court may deny relief on that basis, regardless of whether the issue of timeliness was raised in the trial court.

Section 16–5–402(1.5), C.R.S.1999.

■ The statute as amended does not require the appellate court to deny relief based on the defendant's failure to file a timely motion. Rather, the determination whether relief should be denied on that basis is a discretionary one. Section 16–5–402(1.5), C.R.S.1999; *People v. Kilgore,* 992 P.2d 661 (Colo.App.1999). Under the circumstances of this case, we exercise our discretion to consider defendant's motion on the merits. We do so based upon our review of the record, which reveals that after the trial court denied defendant's first Crim. P. 35(c) motion, it nevertheless appointed counsel to represent him on his Crim. P. 35(c) motion and granted a motion for free transcripts to be used in preparation for a hearing on that motion. Thus, when defendant filed his second Crim. P. 35(c) motion, he may have reasonably believed the court was prepared to consider it on the merits.

### B.

■ Similarly, while Crim. P. 35(c) gives trial courts the discretion to deny a post-conviction motion on the ground that it is successive, the rule does not preclude trial courts from considering successive motions. Specifically, Crim. P. 35(c) provides that the trial court "need not entertain a second motion or successive motions for similar relief based upon the same or similar allegations on behalf of the same prisoner."

Here, the trial court did not *sua sponte* deny defendant's motion as successive but instead elected to address his claims on the merits. We find no abuse of discretion in its having done so despite the fact that defendant had raised the same claims unsuccessfully in a previous motion.

### II.

The supreme court recently decided *Craig v. People,* 986 P.2d 951 (Colo.1999), in which it overruled *People v. Sandoval, supra.* In *Craig,* the supreme court held that cases involving post-conviction challenges to the imposition of a mandatory parole period require a two-part inquiry.

First, the court must determine whether the defendant was explicitly promised a sentence that alters or eliminates the statutorily required mandatory parole period. Absent an express promise regarding mandatory pa-

role, the agreement will not be interpreted as providing for a sentence related to mandatory parole that is statutorily prohibited. However, if such an express promise was made and was a material part of the plea agreement, the defendant's plea is rendered invalid. Because such an agreement calls for an illegal sentence, the defendant would not be entitled to specific enforcement of the plea agreement. *Craig v. People, supra.*

Second, the court must determine whether the defendant was adequately advised regarding the mandatory parole period. If the defendant received an inadequate advisement and the error was not harmless, the remedy is to reduce the defendant's sentence, provided such a modification would not result in an illegal sentence. If the defendant's sentence cannot be reduced, the only remedy for the improper advisement is to permit the defendant to withdraw his plea. *Craig v. People, supra.*

Applying the principles announced in *Craig* and its companion case, *Benavidez v. People,* 986 P.2d 943 (Colo.1999), we now turn to an analysis of defendant's claims.

### A.

Defendant claims that his plea agreement called for a stipulated 12–year sentence comprised of a 9–year prison term and a 3–year mandatory parole period, and that the sentence imposed violates the terms of his plea agreement. We disagree.

■ Initially, we note that the determination of the meaning of a plea agreement is a question of law. Accordingly, we review the trial court's determination of the meaning of a plea agreement and its interpretation of a party's obligation under the agreement *de novo. Craig v. People, supra.*

■ In interpreting a plea agreement, we determine "the meaning a reasonable person would have attached" under the circumstances. *Craig v. People, supra,* 986 P.2d at 961. This is an objective test, and is thus not based on the subjective understanding of the defendant.

■ Here, the parties' agreement regarding sentencing as described in the written plea agreement provided that he would receive a 12–year DOC sentence.

In *Craig,* the supreme court, interpreting nearly identical language in the defendant's plea agreement, rejected the claim that the parties intended the stipulated DOC sentence to limit the defendant's total sentence, including the mandatory parole term, to the period specified. The court concluded that a reasonable person would understand a stipulated DOC sentence as referring to the imprisonment component of the sentence only, not the defendant's "overall exposure." *Craig v. People, supra,* 986 P.2d at 961–62.

Accordingly, contrary to defendant's assertion, the parties' sentencing agreement was limited to the amount of time he would serve in prison, and did not address the issue of mandatory parole.

### B.

■ Defendant next contends that he was not advised that he would be required to serve a three-year mandatory parole period after completing his stipulated prison sentence, and that the Crim. P. 35(c) court erred by denying his motion on that basis. We agree that defendant was not adequately advised of the parole consequences of his plea, but conclude that any error is harmless.

■ We review the record as a whole to determine whether the defendant was adequately advised regarding the parole consequences of his guilty plea. *Craig v. People, supra; People v. District Court,* 868 P.2d 400 (Colo.1994).

■ A proper advisement must inform the defendant of the maximum length of the mandatory parole period, and must indicate that the parole term "occurs after, in addition to, or distinct from" the period of imprisonment imposed. *Craig v. People, supra,* 986 P.2d at 963.

Here, defendant was advised both in the written plea agreement and by the providency court that he would be required to serve a period of parole in addition to his DOC sentence. Defendant was thus aware that the parole period was a consequence of his plea distinct from his stipulated prison sentence.

However, both the written and oral advisement defendant received were deficient because they did not inform him of the maximum length of the mandatory parole period. *See Craig v. People, supra.*

▄▄▄ The failure to advise the defendant of the length of mandatory parole may be harmless error. As the *Craig* court concluded:

> In cases where the defendant is alerted as to the full range of penalties to which he could legitimately be exposed, but is not apprised of the consequence of mandatory parole, harmless error results when the term of imprisonment, combined with the mandatory period of parole, falls within the range of sentence that the defendant was at risk of receiving.

*Craig v. People, supra,* 986 P.2d at 964. *See also Benavidez v. People, supra.* Indeed, assuming a defendant has been advised of mandatory parole at the providency hearing, the *Craig* court concluded that, "because mandatory parole applies equally to stipulated sentences to the D.O.C. as well as those that are not stipulated," a trial court is not required to advise a defendant specifically of the period of mandatory parole when it reviews sentence concessions agreed to by the parties. *Craig v. People, supra,* 986 P.2d at 966.

In so doing, as we read it, the supreme court extended the scope of *People v. Tyus,* 776 P.2d 1143 (Colo.App.1989). There, a division of this court held that where the length of the defendant's prison sentence is left to the discretion of the sentencing court, an inadequate parole advisement is harmless if the period of incarceration actually imposed plus the parole period does not exceed the maximum prison sentence which the defendant was advised he or she could receive.

The *Tyus* court did not address whether the same rule would apply in cases in which the defendant's plea bargain included a stipulated sentence or a stipulated sentence cap. Arguably, the *Tyus* rule would not apply in such cases because, in such circumstances, the defendant had bargained for a specific sentence and the terms of the bargain did not include the maximum term to which the defendant was otherwise at risk of being sentenced.

However, in *Craig,* the supreme court concluded that the failure to advise a defendant properly of the term of mandatory parole is harmless if the length of parole and imprisonment together does not exceed the total term of imprisonment "which the defendant was advised [of] and risked receiving." *Craig v. People, supra,* 986 P.2d at 966. When the supreme court discussed the sentence which the defendant "risked receiving," it referred to the maximum sentence which the defendant was advised he could receive before entering into a plea bargain.

Here, defendant was advised by the court that the maximum sentence applicable to the offense to which he was pleading guilty was 16 years. The court then sentenced defendant to 12 years imprisonment under the terms of the plea agreement. The three-year period of parole required under § 18–1–105(1)(a)(V)(A) combined with the 12–year term of imprisonment imposed by the court is less than the 16 years that defendant was advised that he was at risk of receiving for the charged offense.

Thus, because the total of defendant's sentence to imprisonment plus the term of mandatory parole, 15 years, is less than the sentence he was at risk of receiving, the court's failure to advise him of the length of such parole is harmless error. *See Craig v. People, supra.*

The order is affirmed, and the cause is remanded for correction of the mittimus.

Judge DAVIDSON and Judge KAPELKE concur.