23CA1206 Peo v Claypoole 11-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1206
El Paso County District Court No. 22CR1033
Honorable Frances R. Johnson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jamie Linn Claypoole,

Defendant-Appellant.

ORDER VACATED

Division II
Opinion by JUDGE MEIRINK
Fox and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Jamie Linn Claypoole, appeals the district court's order imposing restitution for losses arising from a dismissed case. We vacate the portion of the district court's order awarding restitution in the dismissed case.

## I.    Background

¶ 2    In November 2021, M.B. reported to law enforcement that his motorcycle was stolen from the parking lot of his apartment complex. The surveillance video from the apartment complex showed two male suspects arrive in a white truck, attach the motorcycle to the truck's trailer hitch, and drive off.

¶ 3    Several months later, Claypoole was seen leaving a stolen truck. When officers approached Claypoole, he was attempting to start a white and red dirt bike. Claypoole attempted to flee but was taken into custody. Although the vehicle identification number (VIN) was ground off the motorcycle, it was later identified as the vehicle M.B. reported stolen.

¶ 4    As reflected in the charging documents, Claypoole was charged with first degree aggravated motor vehicle theft with two or more prior offenses under section 18-4-409(2), (3)(b), C.R.S. 2025, and chop shop activity under section 18-4-420(3), (4), C.R.S. 2025,

in El Paso County Case No. 22CR1033. As part of a global plea deal, Claypoole pleaded guilty to five counts of felony motor vehicle theft across five separate cases, including Case No. 22CR1033. Claypoole received a controlling sentence of sixteen years in the Department of Corrections' custody. As part of the plea agreement, the prosecution dismissed a traffic case and three other pending felony cases, including El Paso County Case No. 22CR725. The agreement to dismiss these matters was not included in the plea paperwork, but Claypoole's counsel made a record at the providency hearing that the parties agreed to dismiss the cases as part of the plea agreement. The plea agreement did not mention the specific amount of restitution to be ordered in Case No. 22CR1033 or Case No. 22CR725. The court granted the prosecution forty-two days in which to file its restitution request. Neither party, nor the court, addressed which cases were subject to restitution during the providency hearing.

¶ 5    The prosecution filed its restitution request in April 2023, seeking $4,529.99 to be paid to M.B. in Case No. 22CR1033 and $9,800.44 to the victim in "Case 22CR725 DISMISSED PER PLEA." Claypoole filed an objection. At the restitution hearing, the

prosecutor introduced testimonial evidence for the restitution sought in Case No. 22CR1033. Claypoole objected to the restitution amount requested in Case No. 22CR1033. The court found that the prosecution established that Claypoole's conduct proximately caused M.B.'s losses in Case No. 22CR1033 but reduced the requested payment amount to $3,547.50.

¶ 6 The prosecution did not provide testimony or evidence supporting the $9,800.44 in restitution requested for Case No. 22CR725. Claypoole objected, arguing the prosecution did not provide evidence to support the restitution sought. The prosecutor requested a continuance, claiming he thought that defense counsel had only objected to the amount requested in Case No. 22CR1033 and not in Case No. 22CR725, and he was unprepared to address restitution in Case No. 22CR725. The court agreed with the prosecution and, over the defense's objection, found good cause to continue the hearing.

¶ 7 The prosecution submitted an amended restitution request lowering the restitution amount in Case No. 22CR1033 but continuing to seek $9,800.44 for dismissed Case No. 22CR725. The amended request also noted that "[t]he decrease in restitution is in

case 22CR1033 only. All costs in the dismissed case 22CR725 remain the same."

¶ 8 At the second restitution hearing, defense counsel indicated as follows:

> I've reviewed the additional documentation for the 22CR725 case which was dismissed as part of the plea. Outside of maintaining my objection regarding the timing under good cause, I don't have a further objection to the amount. [The prosecution] did provide me with supporting documentation. So we don't need to have a hearing. And I let [the prosecutor] know that so he did not have to appear today.

¶ 9 Over defense counsel's objection, the court ordered restitution in the amount of $13,347.94, with $3,547.50 as restitution for M.B. in Case No. 22CR1033, and $9,800.44 as restitution for the victim in Case No. 22CR725. Claypoole appeals the court's order of restitution for Case No. 22CR725.

## II. Analysis

¶ 10 Claypoole contends that the district court did not have authority to order $9,800.44 in restitution for the dismissed case

and that we should vacate that portion of the restitution order.[1]  We agree.

### A.    Standard of Review and Applicable Law

¶ 11    Although a sentencing court has broad discretion to determine a restitution order's terms and conditions, whether the court had authority to impose restitution is a legal question we review de novo.  *People v. Lockett*, 2025 COA 1, ¶ 29; *People v. Roddy*, 2021 CO 74, ¶ 23.  We also apply the de novo standard when interpreting a party's obligation under a plea agreement.  *Craig v. People*, 986 P.2d 951, 960 (Colo. 1999) (citing *St. James v. People*, 948 P.2d 1028, 1030 (Colo. 1997)).

¶ 12    A sentence that is inconsistent with the statutory scheme is an illegal sentence, and an illegal sentence may be challenged at any time.  *People v. Suttmiller*, 240 P.3d 504, 507 (Colo. App. 2010).  "[W]hen a trial court lacks authority to impose restitution, the resulting sentence is illegal."  *People v. Brooks*, 250 P.3d 771, 772 (Colo. App. 2010).

---

[1] Claypoole was also sentenced to sixteen years in the Department of Corrections' custody.  That portion of the sentence, which was not challenged on appeal, remains undisturbed.  *See People v. Thomas*, 2021 COA 23, ¶ 33 n.7.

¶ 13    In *Roddy*, our supreme court held that "a court may not order restitution for injury or losses proximately caused by conduct that forms the basis of only [a] dismissed charge." *Roddy*, ¶ 28; *People v. Moss*, 2022 COA 92, ¶ 13.  That said, however, "the prosecution and the defendant may strike a plea agreement that extends the scope of the restitution order to include . . . dismissed counts." *Roddy*, ¶ 28; *People v. Sosa*, 2019 COA 182, ¶ 30 ("[W]hen a defendant agrees to make restitution for losses stemming from . . . dismissed counts, [the defendant] is bound by that agreement.").

¶ 14    *Roddy* clarified that the defendant had to agree to pay restitution for the dismissed charge "at the time" the defendant and prosecution entered into the plea agreement on the record. *Roddy*, ¶ 32 (emphasis omitted).  To order a defendant to pay restitution beyond this time was "improper for a court to order." *Id.*  The General Assembly codified *Roddy*'s holding in 2022 when it clarified that "[a]bsent an agreement between the defendant and the prosecution at the time the plea is entered, a court may not impose restitution for pecuniary losses proximately caused by conduct exclusively related to dismissed charges." § 18-1.3-603(11), C.R.S. 2025; Ch. 263, sec. 3, § 18-1.3-603, 2022 Colo. Sess. Laws 1927.

6

¶ 15 Plea agreements are "contractual in nature," and we interpret them in accordance with contract principles. *Keller v. People*, 29 P.3d 290, 295 (Colo. 2000). The question we must consider is "whether the interpretation the defendant claims to have taken is a reasonable one." *Craig*, 986 P.2d at 960-61 ("Our task is not to rewrite the bargain in question, but to interpret it consistently with the reasonable intent of the parties in light of the defendant's right to be treated fairly by the government.").

¶ 16 Whether the defendant's interpretation is reasonable is an objective test. *Id.* at 960. A court interpreting a plea agreement "focuses on the meaning a reasonable person would have attached to the agreement at the time the agreement was entered into." *People v. Antonio-Antimo*, 29 P.3d 298, 303 (Colo. 2000). We look at the plea agreement's plain language and resolve ambiguity in the defendant's favor. *Roddy*, ¶ 24. While we may resolve ambiguity in the defendant's favor, we may not read into an "agreement a term that lacks evidentiary support in the record." *Craig*, 986 P.2d at 962.

¶ 17 In interpreting a plea agreement, courts may consider written documents, oral statements, and the "circumstances of the

government's dealings with the defendant." *People v. Romero*, 745 P.2d 1003, 1010 (Colo. 1987). Unlike with civil contracts, courts can consider extrinsic evidence even where ambiguity is not present, but considering extrinsic evidence "takes on special significance only where the plea agreement is itself ambiguous." *Craig*, 986 P.2d at 961. Where conflict exists between terms of a contract, the specific provisions will prevail over the general provisions. *In re Marriage of Crowder*, 77 P.3d 858, 861 (Colo. App. 2003). Oral statements made on the record after sentencing do not modify a plea agreement's terms. *Keller*, 29 P.3d at 298. "Allowing statements made after the entry of the guilty plea to enter into our determination of a plea agreement's meaning runs counter to" Criminal Procedure Rule 11. *Id.* A court's advisement does not generally alter obligations in an unambiguous plea agreement, but if a court's statements add a term that is inconsistent with the plea agreement, the agreement is altered if the parties acquiesce. *Craig*, 986 P.2d at 961.

B. The District Court Improperly Ordered Restitution in Case No. 22CR275

¶ 18    Claypoole contends that the operative plea agreement did not provide for restitution in Case No. 22CR725 and that absent such agreement, the district court could not order restitution for the dismissed case. We agree.

¶ 19    Paragraphs 7(b) and 29 of the plea agreement discuss restitution. Paragraph 7(b) provides that Claypool "agrees to pay restitution as ordered." Paragraph 29 of the signed plea agreement, in relevant part, provides as follows:

> I agree to pay restitution for all counts and cases governed by this plea agreement, including counts and/or cases dismissed as part of this plea agreement. I further stipulate to causation for restitution purposes in this case and in any case(s) dismissed as part of this agreement.
>
> . . . .
>
> a. As part of my plea agreement with the People, I am agreeing to pay restitution in the other cases and counts that the People have agreed to dismiss. I understand that I engaged in misconduct in the other cases which caused a loss to victims in those cases and that it would be helpful to me in my rehabilitation to be required to make those victims whole. In order to obtain the benefit of the plea offer presented to me by the People *I am agreeing to*

9

*pay restitution in case(s): none and the remaining counts in the current case.*

*. . . .*

b. I understand that the restitution ordered will become a condition of the sentence the court imposes on the case to which I am entering a plea of guilty and my failure to pay that restitution could lead to revocation proceedings instituted against me in the future. *[The investigation number for those other counts is _____.] [The victim in those other counts is _____.]*

(Emphasis added.)

¶ 20 The pertinent provision of paragraph 29(a) indicates that Claypoole agreed to pay restitution in cases "none and the remaining counts in the current case." The plain meaning of the term "none" is "not any," "not any such thing or person," or "no part: nothing." Merriam-Webster Dictionary, https://perma.cc/58EG-NFBR. Use of the term "none" in the plea agreement indicates that no other cases beyond the specified "current case" were subject to the restitution provisions. Likewise, the empty lines in paragraph 29(b), which the prosecutor could have filled in with case numbers and the names of the victims, were left blank.

10

¶ 21    Accordingly, Claypoole's interpretation that the People did not seek restitution for any case except the current case is reasonable. This language reflects the parties' agreement that Claypoole would pay restitution only for the remaining counts in Case No. 22CR1033.

¶ 22    The People argue that the agreement's language is ambiguous when paragraph 7 is read together with paragraph 29. Even if the plea agreement's restitution provisions were ambiguous, our interpretation would remain the same based on two principles that guide our reading of the agreement. First, the more specific term in the plea agreement prevails over the general terms. *See In re Marriage of Crowder*, 77 P.3d at 861. The more specific term in the agreement indicates Claypoole agrees to pay restitution in "none" of the dismissed cases. This term therefore prevails over the general terms in paragraph 29 and in paragraph 7, which provides that Claypoole agrees to pay restitution as ordered. Second, we are obligated to "look to the plain language of the agreement and resolve any ambiguity in favor of the defendant." *Roddy*, ¶ 24. Any ambiguity must be resolved in Claypoole's favor. Therefore, at the

time the plea was entered, Claypoole agreed to pay restitution "in the remaining counts in the current case" only.

¶ 23    The People argue that we should consider as extrinsic evidence statements made at the providency hearing and two restitution hearings, the restitution request, and Claypoole's objection to that request.  We disagree for the reasons explained below.

¶ 24    The providency hearing occurred on March 2 — the same day Claypoole signed the plea agreement.  Although the parties broadly addressed restitution at the providency hearing, neither party addressed restitution as it applied to specific cases, and the prosecution never asked to amend the plea agreement to include restitution for the dismissed cases.

¶ 25    The People indicated that "there will be [restitution]" and asked for forty-two days in which to file a restitution request.  Defense counsel then made a record that she had "advised Mr. Claypoole of restitution" and that he was "willing to waive his right to be present for a hearing."  The court then ordered and reserved restitution for forty-two days.

¶ 26    While the prosecutor indicated that he would seek restitution and defense counsel acknowledged that she "advised" Claypoole of

12

restitution, the parties never discussed restitution in the dismissed cases or any intent to amend the plea agreement. The parties' statements made at the providency hearing do not provide additional information concerning restitution or change our interpretation of the plea agreement.

¶ 27 The People further contend that even if, at the time he entered into the plea agreement, Claypoole did not agree to pay restitution in the dismissed cases, he later acquiesced to pay restitution in Case No. 22CR725. In support, the People argue that Claypoole participated in determining the amount of restitution in Case No. 22CR725 and, while defense counsel objected to the amount of restitution in Case No. 22CR1033, she failed to object to restitution in Case No. 22CR725.

¶ 28 The People's argument runs counter to the rule announced in *Roddy* — and later codified in section 18-1.3-603(11) — that the defendant must agree to pay restitution for a dismissed case at the time the plea was entered on the record, and we are unable to consider it. *See* § 18-1.3-603(11); *Roddy*, ¶ 32.

¶ 29 Claypoole did not agree to pay restitution for the dismissed cases at the time the plea was entered on the record, and the

district court's award of restitution for Case No. 22CR725 is improper.

## III. Disposition

¶ 30    We vacate the portion of the order awarding restitution in Case No. 22CR725.

JUDGE FOX and JUDGE HAWTHORNE concur.