Marlon M. ALEXANDER, Applicant,

v.

Juanita NOVAK and The Attorney General of the State of Colorado, Respondents.

No. Civ.A. 99–K–1685.

United States District Court, D. Colorado.

Nov. 24, 1999.

Marlon M. Alexander, pro se.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Attorney General's Office, Criminal Enforcement—Appellate, Denver, CO, for respondents.

## MEMORANDUM OPINION DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

KANE, Senior District Judge.

■ Applicant Marlon M. Alexander is in the custody of the Colorado Department of Corrections (DOC) at the Arkansas Valley Correctional Facility at Crowley, Colorado. Before me is Mr. Alexander's *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. I construe the application liberally because Mr. Alexander is representing himself. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

Mr. Alexander alleges in 1996 he pleaded guilty in the state district court in Denver, Colorado to attempted escape and was sentenced to two years in the custody of the DOC. He contends he has completed his two-year sentence and is currently incarcerated because he violated the conditions of his mandatory parole. In this application, he claims, when he agreed to plead guilty, he was not advised his sentence included a period of mandatory parole in addition to the two years in DOC custody. For the reasons discussed below I deny the application.

## I. *Background.*

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999); *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1534 (10th Cir.1994). The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts. Fair presentation requires that the issue presented in federal court be properly presented "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever,* 36 F.3d at 1534.

Mr. Alexander asserts he filed a Rule 35(c) postconviction motion in the Denver District Court challenging the mandatory parole portion of his sentence. He states, on January 15, 1999, the state court ordered a transcript of his plea hearing be produced at state expense. He contends the state court has taken no further action on the Rule 35(c) motion despite his two requests for a ruling. He petitioned the Colorado Supreme Court for a writ of mandamus to compel the district court to rule on the motion. On July 26, 1999, the Colorado Supreme Court denied the mandamus petition.

On September 2, 1999, Magistrate Judge O. Edward Schlatter entered an Order to Show Cause. Based on the allegation in the application that the Rule 35(c) postconviction motion was pending in the Denver District Court, the magistrate judge inferred Mr. Alexander had not presented his claim fairly to the Colorado Supreme Court. The Order to Show Cause stated Mr. Alexander had failed to allege sufficient facts to demonstrate an adequate state remedy was not available or effective to protect his rights. Magistrate Judge Schlatter ordered Mr. Alexander to show cause why the habeas corpus application should not be denied for failure to exhaust state remedies.

In the Response [sic] to Order to Show Cause, Mr. Alexander repeated his allegations that the Denver District Court had failed to rule on his Rule 35 postconviction motion and that the Supreme Court had denied his petition for a writ for mandamus. Citing *Dever,* he stated the exhaustion requirement had been met because the highest court had exercised its discretion not to review the case by refusing to rule on his alleged denial of due process, leaving him with no further state court remedy.

On September 23, 1999, Magistrate Judge Schlatter issued an Order Discharging Show Cause Order and Drawing Case to District Judge and Magistrate Judge. The magistrate judge stated, in his return to the order to show cause, Mr. Alexander had argued there had been excessive delay by the state district court in addressing his postconviction motion. Because the status of that motion in state court was not clear based on the information before him, the magistrate judge determined the habeas corpus application would not be denied for failure to exhaust state remedies. The magistrate judge ordered that the September 2, 1999 Order to Show Cause be discharged and the case drawn to a district judge and magistrate judge. The case was assigned to me and the Respondents were ordered to show cause why the application for habeas corpus should not be granted.

On October 27, 1999, Respondents filed an Answer [sic] to Order to Show Cause stating, on April 2, 1996, Mr. Alexander had pleaded guilty to attempted escape and had been sentenced to two years in the DOC. Respondents attached as Exhibit D the Judgment of Conviction, Sentence and Order to Sheriff reflecting that, on April 2, 1996 a plea of guilty to attempted escape had been entered, Mr. Alexander had waived preparation of a presentence report, and had been sentenced to the DOC for two years plus a period of parole authorized by Colo.Rev.Stat. § 17–22.5–303 (1998) to be served consecutively with the sentence he was currently serving.

He was granted 185 days presentence confinement credit and ordered to pay extradition costs as terms and conditions of parole.

Respondents further stated, on December 2, 1999, Mr. Alexander had filed a motion for postconviction relief (Response [sic] to Order to Show Cause, Ex. D), alleging he had not been advised that his two-year prison sentence carried with it a three-year period of mandatory parole. On January 15, 1999 the state court granted Mr. Alexander's request for a transcript of his providency hearing (*Id.,* Ex. B). On July 29, 1999, the trial court summarily denied Mr. Alexander's postconviction motion by a written order, stating: "No copy of the transcript has been presented as the Court directed to the Movant on April 20, 1999," (*id.,* Ex. A). Respondents noted Mr. Alexander had not appealed the denial to the Colorado Court of Appeals and, as such, had failed to exhaust his state remedies.

Respondents nevertheless addressed the merits of the habeas corpus application. They noted, under AEDPA, review of a state court's decision is limited and habeas corpus relief may not be granted unless the decision was:

(1) ... contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Respondents asserted, without a copy of the transcript of the providency hearing, the state district court was unable to evaluate whether, as a factual matter, Mr. Alexander was properly advised of the period of mandatory parole by the trial court. Accordingly, the denial of the motion for postconviction relief was neither contrary to nor an unconstitutional application of clearly established federal law. Moreover, due to Alexander's failure to comply with the court's order, the trial court was unable to determine the relevant facts, *i.e.* did not make any, let alone an unreasonable, determination of the facts, because it did not have the transcript.

Respondents further noted, as of July 1, 1993, all felony convictions in Colorado involving a sentence of imprisonment have been subject to an additional period of mandatory parole. *See* Colo.Rev.Stat. § 18–1–105(1)(a)(V)(A) (1998). The exact length of the additional parole term is specified by reference to the class of felony for which the defendant was convicted. Here, Mr. Alexander was convicted of a Class 4 felony and subject to a period of three years of mandatory parole. That period of parole may not be waived or suspended by the defendant, the prosecution or the court. *Craig v. People,* 986 P.2d 951, 958 (Colo.1999).

Respondents argue, even if the mandatory parole advisement in this case was insufficient, that error is harmless *ab initio* as, according to Mr. Alexander's application, he was advised that he could receive up to a maximum of six years and the term of imprisonment actually imposed was two years, combined with the mandatory period of parole of three years, still falling within the range of sentence that Mr. Alexander was at risk of receiving. Under these circumstances, any error in the parole advisement would be harmless. *Craig,* 986 P.2d at 964; *People v. Tyus,* 776 P.2d 1143, 1144 (Colo.App.1989).

On October 29, 1999, I ordered a copy of the state court record, including the transcript of the Rule 11 proceeding held on April 2, 1996 and records from any Rule 35 evidentiary hearing, to be delivered to this court. On November 2, 1999, Respondents filed a Response to 10/29/99 Order stating it was not necessary for this court to review the state court record to conclude that the application should be dismissed for failure to exhaust. Respondents further stated it would be inappropriate for me to review the April 2, 1996 transcript in evaluating Mr. Alexander's claim as the

district court had denied the postconviction motion for failure to provide the transcript and no state appellate court had reviewed that order of the district court nor had the opportunity to review the transcript. I struck Respondents' November 2, 1999 filing as impertinent.

## II. *Exhaustion Requirement.*

■ My review of the state court record confirms, contrary to Mr. Alexander's assertion, the state district court has ruled on his Rule 35 postconviction motion. On January 15, 1999, the state district court judge entered an order stating Mr. Alexander was entitled to have a transcript of the Rule 11 proceeding produced at state expense. (R. At 42.) On March 12, 1999, Mr. Alexander wrote to the state district court judge stating, despite the January 15, 1999 order, he had not received a copy of the transcript. (R. at 43.) On April 6, 1999, Mr. Alexander again wrote the state district court judge stating he had the previous day received a copy of the transcript which showed his Rule 35(c) motion had merit, in that the trial court had not advised him at any time of any period of mandatory parole as required by Colo. R.Crim.P. 11(b)(4) and *People v. Jones,* 957 P.2d 1046 (Colo.App.1997). He asked the state court judge to treat the letter as a "motion for immediate release" and grant it as he had almost served his two year sentence. (R. at 45.)

On April 20, 1999, the district court judge wrote Mr. Alexander # 84022 a letter stating: "A copy of the transcript will have to be filed as an exhibit in support of your Motion." (R. at 47.) The letter was returned to the court stating: "Name & # don't Match," (R. at 46.) The mistake lay in the letter being addressed to Mr. Alexander as # 84022, whereas his correct prison number is # 84002 (*See* R. at 45.) The state court record fails to disclose a further attempt to mail the letter to Mr. Alexander with his correct number appearing on the letter and envelope. Thus, Mr. Alexander was never notified by the state court that he was required to file a copy of the transcript in support of his Rule 35(c) motion.

On July 26, 1999, Mr. Alexander filed a petition for writ of mandamus (dated July 19, 1999) in the Colorado Supreme Court, requesting that court to order the state district court to issue a ruling on the Rule 35(c) motion. (R. at 48.) On July 26, 1999, the Supreme Court, en banc, denied the petition. (R. at 53.)

On July 29, 1999, the state court trial judge entered the following Order: "The 35(c) Motion is denied. No copy of the transcript has been presented as the Court directed to the Movant on April 20, 1999." (R. at 63.) At the bottom of the Order, the following words appear: "cc: District Attorney, Public Defender's Office, Defendant, Attorney for Defendant, Sheriff." (*Id.*) The naming of those to whom this type of order is sent is apparently in recitative form because Mr. Alexander was not represented by an attorney for the purposes of filing the Rule 35(c) motion. There is no indication in the state court record that the Order was sent to Mr. Alexander bearing his correct prison number. There is also no indication in the record that the Order was returned to the court, as had been the case with the April 20, 1999 letter. From the habeas application, however, it is clear Mr. Alexander did not receive a copy of the Order denying the motion because he requests this court to issue an order requiring the state district court to issue a ruling on the Rule 35(c) motion.

In all but unusual circumstances, a state prisoner must exhaust his state court remedies before a federal court will entertain an application for writ of habeas corpus. *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); 28 U.S.C. § 2254(b). Mr. Alexander has not exhausted his state court remedies as he has not appealed the denial of his Rule 35(c) postconviction motion to the Colorado Court of Appeals. The petition for a writ of mandamus to the Colorado Supreme Court was a request for a ruling on the

Rule 35(c) motion, rather than an opportunity for the state courts to correct the alleged constitutional violation. The record reflects the state district court letter requesting a copy of the transcript was improperly addressed and did not reach Mr. Alexander. It is unclear from the state court record whether the Order denying the Rule 35(c) motion was properly addressed. The request in the habeas application establishes Mr. Alexander had no knowledge of the ruling.

 Failure to pursue available state remedies is not an absolute bar to appellate consideration of habeas corpus claims. *Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). Courts may grant habeas relief in "special circumstances," even though the petitioner did not exhaust state remedies. *Frisbie v. Collins,* 342 U.S. 519, 520, 72 S.Ct. 509, 96 L.Ed. 541 (1952). Determining whether such special circumstances exist is a factual appraisal for this court to decide. *Id.* I determine in this case special circumstances exist as described above: Mr. Alexander did not receive either the April 20, 1999 letter nor the July 29, 1999 Order. In an effort to compel a ruling on his Rule 35(c) motion, Mr. Alexander filed a petition for writ of mandamus. Not knowing that a ruling had been issued, he perceived state remedies as inadequate or ineffective and filed his habeas application with this court. Any lack of exhaustion was not due to Mr. Alexander's fault. Because of the anomalous special circumstances surrounding the lack of exhaustion, I address the merits of the application.

### III. *Merits.*

 Mr. Alexander claims he was never advised during the Rule 11 hearing of mandatory parole, that such parole was a direct consequence of his guilty plea and, as such, the court was required to advise him of the parole under *People v. Jones,* 957 P.2d 1046 (Colo.App.1997). He states in his application for habeas corpus that he entered a plea of guilty pursuant to a plea bargain, the terms of which were that the state would: "DROP THEFT COUNTS, SENTENCE TO 2–6 YEARS IN D.O.C. PLED [sic] TO AMENDED CHARGE OF ATTEMPTED ESCAPE VERSUS ESCAPE." (Application Habeas Corpus ¶ 8 at 2.)

I have reviewed the transcript of the April 2, 1996 hearing at which Mr. Alexander was represented by an attorney of the state public defender's office. The deputy district attorney advised the judge that the prosecution anticipated Mr. Alexander pleading guilty to an added charge of attempted escape, a Class 4 felony, and that the other counts would be dismissed. (Transcript April 2, 1996 Hearing at 2–3.) Mr. Alexander told the court that was what he wanted to do. (Tr. at 3.) The court read Mr. Alexander the Class 4 Felony Charge of attempted escape and the prosecutor told Mr. Alexander what the state would have to prove to find him guilty of the charge beyond reasonable doubt. (Tr. At 6–7.) Mr. Alexander stated he understood the elements and did not have a legal defense or justification at the time he committed the offence. (Tr. at 6–9.) The judge then asked Mr. Alexander: "Do you know what the possible penalty is for this Class 4 felony?" (Tr. at 9.) Mr. Alexander replied: "I think it's four—two to six years." (*Id.*) The judge then clarified: "In the Department of Corrections. You understand that?" (*Id.*) Mr. Alexander responded: "Yes, ma'am." (*Id.*) The judge added: "Now, if the Court would find extraordinary mitigating circumstances, the minimum would be reduced to one year, and if the Court would find extraordinary aggravating circumstances, the maximum would be increased up to 12 years. So the entire range of time you could be sentenced is one year up to 12 years." (Tr. At 9–10.) Mr. Alexander responded: "Yes, ma'am." (Tr. At 10.)

Later, the judge asked: "Mr. Alexander, other than the district attorney dropping the original two charges against you, has anyone promised you anything else in order to get you to plead guilty to this added charge?" (Tr. at 11.) Mr. Alexander re-

sponded: "No, ma'am." (Tr. At 12.) The court then inquired: "Do you understand if there are any promises that I don't know about, that I don't have to follow those promises?" (*Id.*) To this, Mr. Alexander replied: "Yes, sir [sic]." (*Id.*) The judge then explained the rights Mr. Alexander was forfeiting by pleading guilty and asked if he understood such was the case. (*Id.*) Mr. Alexander responded affirmatively, saying that was what he wanted to do. (*Id.*) The court then asked if he had any questions about the things which the court or prosecuting attorney had explained to him, (*id.*), and Mr. Alexander responded that he did not, (Tr. At 13). The judge asked if, understanding what all these things meant, he wished to plead guilty or not guilty to attempted escape, a Class 4 Felony. (*Id.*) Mr. Alexander then plead guilty. (*Id.*)

Thereafter, the court inquired about the circumstances of Mr. Alexander's incarceration and attempted escape. (Tr. at 13–16.) Mr. Alexander then stated he wanted to give up the right to have a presentence report: "I just want to go ahead … Get this thing over with." (Tr. at 18.) The court entered judgment of conviction for the attempt to escape, Class 4 felony, and asked the prosecutor if he had anything to say concerning sentencing. (*Id.*) The prosecutor mentioned a prior felony conviction, a violation of parole and reference to an additional charge of grand larceny. (Tr. at 18–19.) The judge asked the deputy district attorney if he had a recommendation with regard to sentence and he responded: "No." (Tr. at 19.) The assistant public defender representing Mr. Alexander asked the court to give a mitigated sentence in light of the reason for his leaving, which was his father's illness. (*Id.*) The court also offered Mr. Alexander the opportunity to make a statement and he addressed the court. (Tr. at 19–20.)

The judge found the circumstances did not justify mitigation and sentenced him to the Department of Corrections for a period of two years to be served consecutively with the sentence he was currently serving. (*Id.*) The court then determined Mr.

Alexander should receive credit on his sentence for 185 days for presentence time and added: "And the Court will further recommend as terms and conditions of parole on this incident, that he obtain—pay any extradition costs if there are any." (Tr. At 21.)

At the time of his pleading guilty to the charge of attempted escape, Mr. Alexander acknowledged the range of time to which he could be sentenced was between one year and twelve years in prison. The judge sentenced him to two years in prison. Although no specific period of parole was mentioned, the judge did mention parole in discussing extradition costs. The April 2, 1996 Judgment of Conviction reflects Mr. Alexander was sentenced to the DOC for two years plus a period of parole authorized by Colo.Rev.Stat. § 17–22.5–303.

■ A defendant must be advised at the time of entry of his plea of the mandatory period of parole he will be forced to serve as a direct consequence of the entry of the plea. *People v. Jones,* 957 P.2d at 1048. Here, before he pleaded, Mr. Alexander was advised that he would receive a sentence of between one and twelve years. The judge imposed a two year sentence. Thus, Mr. Alexander is correct in stating that, before pleading guilty, he was not advised of the mandatory period of parole that would result from his guilty plea.

To the extent the judge erred in failing to mention the mandatory parole, however, such is deemed harmless *ab initio* in the circumstances of this case. Mr. Alexander made the guilty plea on the judge's advisement that he could receive up to twelve years in prison.

> [I]n cases where the defendant is alerted as to the full range of penalties to which he could legitimately be exposed, but is not apprised of the consequence of mandatory parole, harmless error results when the term of imprisonment, combined with the mandatory period of parole, falls within the range of sentence the defendant was at risk of receiv-

ing. . . . In such cases, the error already will have been rendered harmless by virtue of the fact that the combined sentence of imprisonment and mandatory parole imposed by the trial court neither exceeds nor substantially departs from the range of penalties set forth in its earlier advisement and which the defendant was at risk of receiving.

*Craig,* 986 P.2d at 964 (footnotes and citation omitted).

In *People v. Tyus,* 776 P.2d 1143 (Colo. App.1989), the court found the trial court's failure to advise defendant of the mandatory parole term did not constitute reversible error because the length of defendant's sentence was less than the maximum that he was advised he could receive, that the court properly determined that defendant had entered a valid guilty plea and had thus, committed no error. Similarly here, the length of Mr. Alexander's sentence (even taking the mandatory parole into account) was less than the twelve years he was advised he could receive. Thus, any error in not apprising Mr. Alexander of the consequence of mandatory parole was harmless.

### IV. *Conclusion.*

For the aforesaid reasons, the habeas application is denied. Accordingly,

IT IS ORDERED THAT the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is DENIED.