**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Robert Charles JOHNSON, Respondent.**

No. 99SC219.

Supreme Court of Colorado, En Banc.

April 24, 2000.

Rehearing Denied May 15, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Paul Koehler, Assistant Attorney General, Appellate Division Denver, Colorado, Attorneys for Petitioner.

Peter B. Albani, Denver, Colorado, Michael T. Kossen, Highlands Ranch, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

The People ask us to reverse the court of appeals' ruling that defendant-respondent Robert C. Johnson (Johnson) was entitled to a sentence reduction under his plea agreement. The court of appeals ordered the reduction after concluding that the District Attorney (DA) breached the agreement by refusing to perform a polygraph examination on Johnson. Because we hold that the DA acted in good faith under the circumstances by refusing to proceed with the polygraph examination, we reverse the judgment of the court of appeals.[1]

I.

Defendant–Respondent Robert C. Johnson pled guilty in 1996 to two criminal counts: (1) accessory to crime under section 18–8–105, 8B C.R.S. (1986 & 1996 Supp.), a class four felony with a presumptive sentencing range of two to six years imprisonment; and (2) second degree burglary under section 18–4–203, 8B C.R.S. (1986), a class three felony with a presumptive sentencing range of four to twelve years imprisonment. His plea agreement stipulated to a twenty-year sentence to the Department of Corrections.[2] However, the agreement provided that Johnson's sentence could be reduced, on resentencing, to a cap of six years if Johnson were to successfully pass a polygraph examination administered through the DA.[3]

The incident leading to the charges against Johnson centered on the murder of Monte Charbonneau (Charbonneau). Johnson and Jason Mayo (Mayo), who both knew Char-

---

1. We granted certiorari on the following issue: Whether the court of appeals erred by forcing the trial court to impose an alternative reduced sentence where the defendant failed to comply in good faith with the terms of a plea agreement.

2. The DA requested that the sentencing judge sentence Johnson to four years on the accessory to crime charge, and 16 years on the burglary count. The judge agreed, and this is the sentence embodied in Johnson's guilty plea.

3. The plea agreement provided for dismissal on resentencing of the burglary count to achieve this sentence reduction.

bonneau, went to the hotel room where Charbonneau was staying and asked to use the bathroom. Charbonneau let them in, whereupon Mayo pulled out a pistol and shot Charbonneau. In later questioning, Mayo indicated Johnson was unaware that Mayo intended to shoot Charbonneau when they went to the hotel. Evidence on this point was conflicting, however. The parties agreed that the polygraph component of the plea agreement was designed to test Johnson's contention that he was "not involved in the planning, formation, or commission of the murder of Monte Charbonneau." The pertinent section of the agreement stated:

> [I]f defendant successfully passes DA polygraph DA agrees to reduce sentence and plea to a cap of 6 years.

At sentencing, the trial court asked the defense if the "statement of the people who administer the polygraph [as to] whether [Johnson] passes or not is conclusive to that issue." Both Johnson and his defense counsel agreed that the DA polygraphist's statement would be conclusive.[4]

Shortly after entering his plea of guilty, Johnson appeared for the examination and the DA's polygraphist asked a series of pre-examination questions. One question related to whether Johnson had taken previous polygraph examinations related to the crimes at issue in this case. Johnson answered that he had taken two such examinations.

The polygraphist then stated that he would need to see complete information from the earlier examinations in order to conduct a reliable test of Johnson. The polygraphist testified that he would "question the validity" of his later polygraph test if he did not know the questions asked, the answers given, and

the results recorded in Johnson's two earlier polygraphs. The polygraphist stated that a test subject can become "de-sensitized" to questions asked in previous polygraphs.[5]

Johnson refused to produce the requested information, invoking the attorney work product and attorney-client privileges because earlier polygraphs had been administered for defense purposes. Although he does not claim that the DA knew of these defense polygraphs at the time of plea negotiations and entry, he argues that his bargain did not include disclosure of privileged information.

The DA refused to proceed with its polygraph, reasoning that the polygraphist could not conduct a reliable examination without the earlier polygraph records. Johnson then filed a motion requesting imposition by the trial court of the reduced sentence cap of six years, claiming that he was entitled to the alternative sentence because: (1) he had fulfilled his part of the bargain and (2) the DA had breached the agreement.

Although agreeing with Johnson's contention that the earlier polygraph records were privileged, the trial court denied the motion. The court concluded that the DA had not breached the agreement by refusing to test Johnson without the earlier polygraph records, because they were necessary to conduct a reliable DA test and the DA had not known about the defense tests. The court found to be legitimate the polygraphist's concern regarding the validity of his own examination without having the prior polygraph information:

> The Court denies the defense motion for imposition of alternative sentence, finding that the inability of the—and I use this

---

4. The relevant portion of the transcript reads as follows:

> THE COURT: I take it both counsel are stating that the polygrapher has the say on whether he passed or not, correct?
> [DA]: That would be our position. They are computer scored.
> THE COURT: So the defense is accepting that whatever statement of the people who administer the polygraph is whether he passes or not is conclusive to that issue?
> [DEFENSE COUNSEL]: Yes, Your Honor.
> THE COURT: That's agreeable to you, Mr. Johnson?

THE DEFENDANT: Yes, sir.

5. In explaining de-sensitization, the polygraphist testified that:

> It's called a dampening effect when someone undergoes a polygraph for the same questions, the same issues over and over again, there's a tendency to be desensitized to those questions during a polygraph examination. My understanding is that inconclusives are—you get more inconclusives the more that you ask someone over and over again the same questions.

word in quotes, because it cites paragraph 18 of the plea agreement, the inability of, quote, the DA polygraph, unquote, is occasioned by the defendant's refusal to submit earlier polygraph results, and that therefore a valid evaluation could not be produced. The Court does not in any way seek to order or require the defendant to submit the results of the earlier polygraph examination, but the Court finds that the district attorney did not nor could not have known of the existence of earlier polygraphs absent the defendant making that information known to him. And for that reason the district attorney will not be penalized by the Court finding that the agreement was not—was not complied with by the district attorney's office.

Johnson appealed and, in an unpublished opinion, the court of appeals reversed. *See People v. Johnson*, No. 97CA2128, slip. op. at 7 (Colo.App. Dec. 10, 1998). The court of appeals concluded that: (1) the disclosure of previous polygraph results was not contemplated in the plea agreement and (2) the DA's polygraphist was well aware during plea negotiations that prior polygraphs could affect subsequent tests. The court of appeals concluded that the trial court's ruling left defendant with "a Hobson's choice: either disclose privileged, protected information or forego the agreement." Because the court concluded that Johnson substantially performed his side of the bargain by appearing for the polygraph examination, the court held that he was entitled to specific performance of the alternative six-year sentence.

We disagree. We hold that the DA proceeded in good faith to perform its side of the bargain and that Johnson did not establish his entitlement to the sentence reduction. Consequently, we reverse the judgment of the court of appeals.

## II.

We hold that the DA did not breach its plea agreement with Johnson by refusing to proceed with the polygraph examination in the absence of the information the DA's poly-

graphist requested to assure reliability of the examination.

### A. Principles Guiding Interpretation of Plea Agreements

Courts have long applied contract principles when interpreting defense and prosecution obligations under plea agreements. *See People v. McCormick*, 859 P.2d 846, 856 (Colo.1993) (citing cases). "However, a plea agreement is more than a mere contract between two parties and 'must be attended by constitutional safeguards to ensure that a defendant receives the performance that he is due.'" *Craig v. People*, 986 P.2d 951, 961 (Colo.1999) (quoting *McCormick*, 859 P.2d at 856).

Our task is to interpret a plea agreement consistent with "the reasonable intent of the parties in light of the defendant's right to be treated fairly by the government." *See id.* (citing *People v. Wilbur*, 890 P.2d 113, 117 (Colo.1995)). We interpret plea agreements pursuant to an objective standard, focusing on the meaning a reasonable person would have attached to the agreement under the circumstances. *See Craig*, 986 P.2d at 961. In effectuating the intentions of the parties, we recognize that terms of a plea agreement may be implied as well as expressed plainly on the agreement's face. *See United States v. Bunner*, 134 F.3d 1000, 1003 (10th Cir.1998).

Determination of the parties' obligations under a plea agreement is a question of law we review de novo. *See Craig*, 986 P.2d at 960; *see also St. James v. People*, 948 P.2d 1028, 1030–31 (Colo.1997). In contrast, we review a trial court's factual finding of breach under a clearly erroneous standard. *See St. James*, 948 P.2d at 1031. "Appellate review of plea agreements often involves a blend of law and facts." [6] *Id.*

When a party has materially and substantially breached its own obligations under the plea agreement, this discharges the opposing party from its obligations. *See*

---

6. In discussing trial court and appellate court roles, we have recognized that "[c]ases involving conduct that may have violated plea agreements can turn on an evaluation of demeanor conveyed through voice inflections or even facial expressions." *See St. James*, 948 P.2d at 1031.

*McCormick*, 859 P.2d at 856. A remedy of specific performance on a plea agreement requires the defendant to establish the circumstances entitling him to relief. *See People v. Fisher*, 657 P.2d 922, 928 (Colo.1983). Included in the obligations of all parties to a plea agreement, consistent with contract principles, is a continuing duty to perform in good faith.[7] *See, e.g., United States v. Jones*, 58 F.3d 688, 692 (D.C.Cir.1995)(citing Restatement (Second) of Contracts § 205 (1981)).

### B. Johnson's Plea Agreement

Our primary task in this case is determining the parties' obligations under the plea agreement, which we do de novo. The agreement requires that Johnson "successfully" pass a DA polygraph in order to receive a sentence reduction. The trial judge at the providency hearing confirmed the parties' understanding that the statement of the DA's polygraphist would be conclusive as to whether Johnson's performance on the polygraph examination was indeed "successful."

The question for resolution is whether the DA breached its obligation of good faith and fair dealing by refusing to permit the polygraphist to proceed without the information the polygraphist believed necessary to conduct a reliable examination. *See, e.g., Jones*, 58 F.3d at 692. "The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations. Good faith performance of a contract involves faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo.1996) (citations omitted).

### 1. Construction of the Agreement

■ We now proceed to our first responsibility, construing the parties' agreement.

Johnson and the DA agree that the purpose of the DA's polygraph was to determine whether Johnson knew that Mayo intended to kill Charbonneau when they went to the hotel. The parties expressly agreed that the polygraphist would conclusively determine whether Johnson passed the examination. The problem arose when the polygraphist asked a series of questions and learned of the defense polygraphs for the first time.

In ascertaining whether Johnson has established his compliance with the sentence reduction provision of the plea bargain, we look to the agreement he made to abide by the polygraphist's determination:

> THE COURT: And, in addition, if you successfully pass a polygraph administered by the district attorney's office, the district attorney agrees to reduce the sentence, and you would ... review the sentence, and that you would be sentenced within a range that would not allow the court to sentence you to more than six years.
>
> [DEFENSE COUNSEL]: Judge, it's actually not a review. We would agree that if he passes it, then he would be resentenced, and the sentence could not exceed six years.
>
> THE COURT: In other words, if you passed the polygraph and then instead of 20, you would be looking at [a cap of] 6.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You understand that if you don't pass the polygraph, there won't even be a review?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: Under those circumstances, do you still wish to enter into that kind of plea bargain?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: I take it both counsel are stating that the polygrapher has the say on whether he passed or not, correct?

---

7. The duty of good faith inherent in executory plea bargains such as Johnson's is most typically invoked to bind the government to perform in good faith the discretionary obligations, such as providing substantial assistance testimony at sentencing, that it affirmatively undertakes in a plea agreement. *See, e.g., United States v. Alegria*, 192 F.3d 179, 187 (1st Cir.1999), *United States v. Isaac*, 141 F.3d 477, 483–84 (3d Cir.1998), *United States v. Vest*, 125 F.3d 676, 680 (8th Cir. 1997), *United States v. Pollack*, 91 F.3d 331, 335 (2d Cir.1996), *United States v. Jones*, 58 F.3d 688, 692 (D.C.Cir.1995), *United States v. Lee*, 989 F.2d 377, 380 (10th Cir.1993); *cf. Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (binding prosecution to promise not to testify as to sentencing under executory plea agreement).

[DA]: That would be our position. They are computer scored.

THE COURT: So the defense is accepting that whatever statement of the people who administer the polygraph is whether he passes or not is conclusive to that issue?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: That's agreeable to you, Mr. Johnson?

THE DEFENDANT: Yes, sir.[8]

Consistent with the expressed intent of the parties, we construe the sentence reduction agreement as providing unequivocally that the DA's polygraphist would determine whether Johnson had passed the polygraph exam. We now proceed to our second responsibility, reviewing the trial court's finding that the DA did not breach the agreement.

### 2. Claim of Breach

When Johnson appeared before the DA's polygraphist, the polygraphist asked questions he determined necessary to conduct a reliable examination. At the evidentiary hearing, the polygraphist explained that the questions, answers, and results of Johnson's prior two polygraphs were necessary for him to formulate a reliable and accurate test on the issue of whether Johnson was involved in the planning, formation, or commission of the murder of Charbonneau:

[DA'S POLYGRAPHIST]: Preplanning of the incident itself was an issue; whether he knew before the murder took place that it was going to happen; whether he touched the weapon, questions along those lines.

[DA]: All right.

[DA'S POLYGRAPHIST]: Um, not knowing the questions that were asked in both polygraphs before and not knowing the

results of those polygraphs would make it very difficult for me. And I would suspect that if I asked the same questions the result may be the same, if they were inconclusive or whatever those—those charts came out to be, and I don't know at this point what they were.

I would suspect the validity of my test—or better put, I would question the validity of the test that I gave not knowing those things.

THE COURT: And is my understanding that you learned of the existence of these prior tests through the routine questioning that you do in the pretest that you were about to administer?

[DA'S POLYGRAPHIST]: Yes, sir, that's exactly right.

After explaining his rationale for requiring this information, the polygraphist stated he would have accepted one of Johnson's prior polygraph examinations, if reliably and accurately conducted to test Johnson's alleged non-involvement with Charbonneau's murder:

[DA]: If, in fact, one of those polygraphs on those issues indicated he passed and you believed it was properly and reliably validly conducted, would you feel comfortable relying on that private polygraph?

[DA'S POLYGRAPHIST]: Yes.

The trial court evaluated Johnson's refusal to disclose information from the prior tests and his claim that the DA breached by refusing to proceed. It found to be valid the polygraphist's concern regarding the reliability of his own examination without knowing the questions, answers, and results of the two prior polygraphs. This finding is not clearly erroneous based on the evidence in this record.[9] Hence, we uphold it. *See St. James,* 948 P.2d at 1031 ("[T]he ... question of

8. Likewise, the written "Plea Agreement Of The Parties," signed by Johnson, both counsel, and the trial court, stated: "[I]f defendant successfully passes D.A. polygraph DA agrees to reduce sentence and plea to a cap of 6 years." The mittimus for Johnson's commitment to the Department of Corrections recites: "Defendant to take polygraph with the district attorneys office by Jan 13, 1997. If defendant passes polygraph, sentence may then be reduced."

9. Authorities on polygraph testing support the trial court's finding in this regard. *See, e.g.,* 42 Am.Jur. *Trials* 313 § 107 (1991) ("A retest on the same issue tends to produce a weaker result than that produced in the original test.... This is attributable partly to habituation and partly to diminished strength of issue.")

whether a party has materially and substantially breached a plea agreement is left to the discretion of the trial court.")

The plea agreement did not contemplate that the DA's polygraphist would administer his examination under suspect conditions. To the contrary, it provided that the polygraphist's statement would be conclusive as to whether Johnson had passed the test. Accordingly, we hold that the trial court did not err in concluding that Johnson had not qualified under the agreement to have his sentence reduced from twenty years to six years.

### 3. Claim of Privilege

 Johnson claims the DA did not bargain for the disclosure of privileged information and Johnson never consented to waive the work product and attorney-client privileges as part of his agreement. The DA does not dispute the privileged nature of the prior polygraphs, and the trial court upheld applicability of the privilege to them. Accordingly, for purposes of this case, we assume that the information the DA's polygraphist requested was privileged. In considering Johnson's privilege claims, we are mindful that the standards for interpreting plea agreements require us to consider "constitutional safeguards" and "the defendant's right to be treated fairly by the government." *Craig*, 986 P.2d at 961. Although the attorney-client privilege is not itself a constitutional doctrine, in the criminal context preservation of the privilege may implicate a defendant's Sixth–Amendment right to counsel. *See Hutchinson v. People*, 742 P.2d 875, 882 (Colo.1987).

 We therefore agree with the trial court that it could not, under the circumstances, order Johnson to surrender the requested material to the DA's polygraphist. Nevertheless, under the sentence reduction provision of the agreement, Johnson must accept the DA polygraphist's opinion that he cannot reliably and accurately determine Johnson's success without the requested in-

formation. Johnson cannot assert the privilege and, at the same time, successfully contend that he has qualified for the sentence reduction.

Contrary to the court of appeals' conclusion, we do not view this dilemma as a "Hobson's choice" foisted upon Johnson in violation of his expectations, or fundamental fairness, thereby requiring imposition of the sentence reduction. Rather, this dilemma flowed from Johnson's bargain; he agreed to stand for examination by the DA's polygraphist. Only a statement of successful passage from the polygraphist would trigger the resentencing provision of the plea agreement. Thus, if Johnson wished to invoke the resentencing feature of the agreed—upon disposition, he had to satisfy the polygraphist's good-faith request for information needed to accurately test Johnson's contention that he was not involved in Charbonneau's murder.

 The essence of a plea agreement is the waiver of important rights—often including constitutional rights—in exchange for an agreed upon disposition. *See People v. Kyler*, 991 P.2d 810, 816 (Colo.1999). We conclude that, although Johnson was under no obligation to provide the DA's polygraphist privileged information, he cannot assert the privilege to defeat the essence of the resentencing bargain—that he pass the test to the DA polygraphist's satisfaction.[10]

### III.

Because the DA acted in good faith, we uphold the trial court's ruling that Johnson was not entitled to the resentencing relief he requested. Accordingly, we reverse the judgment of the court of appeals and remand this case to it with directions to reinstate the trial court's order and return this case to the trial court for further proceedings consistent with this opinion.

---

**10.** In so ruling, we distinguish this case from those involving a defendant who stood for the agreed-upon examination, passed, but did not receive the benefit of the government's bargain.

*See Fisher*, 657 P.2d at 927 (citing *Workman v. Kentucky*, 580 S.W.2d 206, 207 (Ky.1979), *overruled on other grounds* in *Morton v. Commonwealth*, 817 S.W.2d 218, 221–22 (Ky.1991)).