The PEOPLE of the State
of Colorado, Plaintiff

v.

Terry Lynn BARTON, Defendant.

No. 07SA58.

Supreme Court of Colorado,
En Banc.

Jan. 14, 2008.

John R. Newsome, District Attorney, Fourth Judicial District, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff.

Douglas K. Wilson, Colorado State Public Defender, Mark G. Walta, Deputy State Public Defender, Denver, Colorado, Attorneys for Defendant.

Justice EID delivered the Opinion of the Court.

We issued a rule to show cause to consider whether the trial court erred by allowing the prosecution to withdraw from its plea agreement with Defendant Terry Lynn Barton ("Barton"). The trial court held that Barton breached her plea agreement by appealing her aggravated sentence under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in violation of a provision in the agreement waiving her right to appeal except for an appeal challenging an "illegal sentence later imposed by the judge." We now make our rule to show cause absolute. We hold that the plea agreement does not waive Barton's right to raise a *Blakely* challenge to her aggravated sentence on appeal. Because Barton did not violate her plea agreement, we hold that the prosecution cannot withdraw from it.

## I.

Barton pleaded guilty to starting the Hayman Fire, the worst fire in Colorado history. The fire raged for nearly a month in 2002. It burned 137,000 acres, destroyed over 100 homes, and ruined $29 million in property. The terrible costs of the fire continue to be felt in our state today, and will be felt far into the future.

Barton, however, was not required to admit to *any* of these facts as part of her plea agreement, nor was she required to admit to working for the United States Forest Service when she started the fire. Indeed, Barton confessed only that she:

started a fire on federal property during a red flag day (a ban on campfires) by burning a letter in a dispersed campsite. The burning of the letter was a reckless act on my part which unfortunately caused a forest fire. The forest fire was unintentional on my part and in fact I tryed [sic] to put it out to no avail.

Barton's plea agreement provided that she would plead guilty to fourth-degree arson, a felony that carries a sentencing range of two to six years' imprisonment. The plea agreement further stated that "[i]t is understood by the parties that the People will be re-

questing an aggravated sentence of 12 years." However, Barton neither stipulated to any facts that would be used specifically for aggravation nor agreed to allow the trial court—rather than a jury—to determine any aggravating facts.

Under the terms of her plea agreement, Barton also acknowledged that, by pleading guilty, she waived certain rights, including, for example, her "right to have a trial to jury" and her right to remain silent. In addition, she acknowledged that by pleading guilty, "I give up my right to raise legal issues and present defenses [to guilt]." She also acknowledged that "[t]he entire matter, except for sentencing, will be settled once and for all" by the plea agreement. Finally, she acknowledged that her guilty plea would prevent her from appealing certain issues in her case. The appeal provision of the plea agreement, in its entirety, states:

G. Right to appeal. I have the right to appeal rulings by the trial judge to a higher court. The higher court could correct any rulings which are contrary to law. If I could not afford the appeal, the state would pay for it, including the costs of a lawyer to represent me. I know I surrender this right when I plead guilty, and I will not be able to appeal any error the judge has made in my case. *The only thing I can appeal once I plead guilty is an illegal sentence later imposed by the judge.*

(Emphasis added).

The trial court accepted Barton's plea agreement at a providency hearing in January 2003. At the hearing, the trial court asked Barton if she understood the terms of her written plea agreement, and she acknowledged that she did. The trial court then advised Barton:

Let's say you went to trial. You presented any defenses that you might have. The DA put on her witnesses, and you put on yours. If the jury felt unanimously that the DA had proven each of those elements beyond a reasonable doubt, they'd return a verdict of guilty in your case, and you'd have the absolute right to appeal that guilty verdict. And when you plead guilty, for most purposes you give up your right to appeal, because in a few minutes I'll ask

you what you did that makes you guilty. Right there you're giving up your right to remain silent. And for most purposes, when you plead guilty, *you give up your right to appeal the guilty verdict.*

(Emphasis added). Barton acknowledged that she understood this advisement, and the trial court accepted her guilty plea.

Two months later, the trial court held a sentencing hearing, where the court received evidence and heard testimony to support aggravation of Barton's sentence beyond the presumptive range specified for fourth-degree arson. Barton objected to aggravation of her sentence on the ground that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), prohibited the trial court from making factual determinations in support of aggravation. The trial court rejected Barton's *Apprendi* argument and held that Barton's sentence should be aggravated because of the devastation caused by the Hayman Fire and the fact that Barton was working as a park ranger, and thus in a position of trust, when she started it. Based on these aggravating factors, the trial court sentenced Barton to twelve years' imprisonment.

Barton appealed her sentence on the ground that it was imposed in violation of the Sixth Amendment, again relying on *Apprendi,* because a jury had not determined the facts supporting aggravation. While Barton's sentence was on appeal, the United States Supreme Court issued its opinion in *Blakely v. Washington,* which applied *Apprendi* to a state sentencing scheme, like Colorado's, that permitted trial courts to impose aggravated sentences. 542 U.S. at 303–04, 124 S.Ct. 2531. After *Blakely,* a trial court could impose an aggravated sentence only if the jury determined the existence of the facts used for aggravation, the defendant admitted to the existence of the facts or agreed to allow the trial judge to determine the facts, or the facts concerned a prior conviction. *See Lopez v. People,* 113 P.3d 713, 716 (Colo.2005).

Before ruling on Barton's appeal, the court of appeals requested supplemental briefing from the parties in order to consider Bar-

ton's aggravated sentence in light of *Blakely*.[1] The court of appeals vacated Barton's sentence on the ground that the judge's imposition of the aggravated sentence violated *Blakely*, since the sentence was based on facts that were neither conceded by Barton as a condition of her plea nor determined by a jury. *See People v. Barton*, 121 P.3d 224, 227–28 (Colo.App.2004), *cert. denied*, 2005 WL 3066766 (Colo. Oct.11, 2005) ("2004 appeal"). In its opinion, the court of appeals remanded the case for resentencing consistent with *Blakely*, but did not specify the precise procedure for resentencing Barton. *See id.* at 230.

On remand, the trial court granted the prosecution's motion to empanel a jury for the purpose of determining the facts for the potential aggravation of Barton's sentence. Before the trial court could resentence Barton, this court issued its decision in *People v. Lopez*, where we held that "the law of this jurisdiction does not permit the statutory maximum sentence to which a defendant has subjected himself by pleading guilty to be increased by subsequent jury findings." 148 P.3d 121, 122 (Colo.2006). Our decision in *People v. Lopez* foreclosed the possibility of empanelling a jury to conduct fact-finding in order to potentially aggravate Barton's sentence.

Barton moved for the trial court to reconsider its order empanelling a jury for resentencing in light of our decision in *People v. Lopez*. The prosecution objected, arguing that Barton materially breached the plea agreement by appealing her sentence in violation of the appeal provision. The trial court agreed and entered an order allowing the prosecution to withdraw from the plea agreement. We then issued a rule to show cause to consider whether the prosecution is entitled to withdraw from the plea agreement.

## II.

The question before us today is whether Barton waived, as part of her plea agreement, her right to appeal her sentence on *Blakely* grounds. If she did not, her 2004 appeal was not a breach of the agreement. Absent a breach by Barton, the prosecution cannot withdraw from its plea agreement with her. *See People v. Isaacks*, 133 P.3d 1190, 1196 (Colo.2006). The appeal provision of the agreement provides, "The only thing [Barton] can appeal once [she] plead[s] guilty is an illegal sentence later imposed by the judge." We thus must examine whether the *Blakely* challenge raised in Barton's 2004 appeal was an appeal of "an illegal sentence later imposed by the judge." The interpretation of a plea agreement "is strictly a question of law." *Benavidez v. People*, 986 P.2d 943, 948 (Colo.1999); *accord Craig v. People*, 986 P.2d 951, 960 (Colo.1999).

The prosecution argues that Barton's 2004 appeal was not an appellate challenge to "an illegal sentence later imposed by the judge." Under the version of Rule 35(a) of the Colorado Rules of Criminal Procedure in place at the time of Barton's sentencing,[2] an "illegal sentence" was one that was "inconsistent with the statutory scheme outlined by the legislature." *People v. Rockwell*, 125 P.3d 410, 414 (Colo.2005). The prosecution contends that Barton's plea agreement adopted this definition of the term "illegal sentence," and points out that Barton's twelve-year sentence is consistent with the statutory scheme applicable to aggravated class four felonies. *See* § 18–1.3–401(1)(a)(V)(A), (6), C.R.S. (2007) (allowing a maximum of twelve years' imprisonment for an aggravated class-four felony). In sum, the prosecution argues that the term "illegal sentence" should be given its technical meaning, as that term is used in the context of former Rule 35.

1. Because Barton's case was pending on direct appeal when *Blakely* was announced, she is entitled to its retroactive application. *Lopez v. People*, 113 P.3d 713, 716 (Colo.2005).

2. At the time of Barton's sentencing, Rule 35(a) stated, "The court may correct *an illegal sentence* at any time and may correct a sentence imposed in an illegal manner within the time provided

herein for the reduction of sentence." (Emphasis added). Effective July 1, 2004, Rule 35(a) was amended to read, "The court may correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence."

Barton, by contrast, argues that the term "illegal sentence" should be given its plain and ordinary meaning; a sentence is "illegal," she continues, when it is unlawful in some way. Under this interpretation of the term, Barton's 2004 appeal-which argued that her aggravated sentence was unlawful because the judge determined the facts supporting aggravation in violation of *Blakely*— would constitute an appeal of "an illegal sentence later imposed by the judge." *See Lopez v. People,* 113 P.3d at 716, 731 (holding that an aggravated sentence must be based on facts found in compliance with *Blakely).*

The court of appeals recently addressed the term "illegal sentence," and its discussion is highly relevant to the case before us. In *People v. Wenzinger,* 155 P.3d 415, 418 (Colo.App.2006), the court observed that the term "illegal sentence" "could [be] read to comprise a variety of procedural infirmities," including a sentence imposed in an unconstitutional manner—that is, in violation of *Blakely.* This is the definition of "illegal sentence" that Barton proposes—namely, one that would encompass all legal challenges to a sentence, including a *Blakely* challenge.

The *Wenzinger* court further noted, however, that this broad definition of "illegal sentence" had been rejected in the Rule 35 context because of the way in which the rule was structured. 155 P.3d at 418 (citing, inter alia, *Rockwell,* 125 P.3d at 414). The former version of Rule 35 distinguished between challenges to "illegal sentences" and challenges to sentences "imposed in violation of the Constitution or laws of the United States or the constitution or laws of [Colorado]." Crim. P. 35(a), (c) (2003). Consequently, the term "illegal sentence," when read in the overall context of Rule 35, had to mean something narrower than an unlawfully imposed sentence, as a challenge to an unlawfully imposed sentence would be covered by Rule 35(c). Thus, we developed a distinction between sentences that were "illegal" (contrary to the legislative sentencing scheme), to be challenged under Rule 35(a), and sentences that were unlawful in other ways (i.e., im-

posed in an illegal manner), to be challenged under Rule 35(c). *See Wenzinger,* 155 P.3d at 418.[3]

In interpreting the plea agreement before us, we agree with Barton that the term "illegal sentence" should be given its plain and ordinary meaning. Indeed, we have repeatedly held that "[i]n interpreting a plea agreement, the court focuses on the meaning *a reasonable person* would have attached to the agreement at the time the agreement was entered into." *People v. Antonio–Antimo,* 29 P.3d 298, 303 (Colo.2000) (emphasis added); *see also People v. Johnson,* 999 P.2d 825, 829 (Colo.2000); *Craig,* 986 P.2d at 960– 61; *People v. Wilbur,* 890 P.2d 113, 117 (Colo.1995); *cf. Lane v. Urgitus,* 145 P.3d 672, 677 (Colo.2006) (A contract should be interpreted "according to the plain and ordinary meaning of its terms."). Here, we believe that a reasonable person would understand the term "illegal sentence," as used in Barton's plea agreement, to mean a sentence that is unlawful in some way.

The overall context in which that term appears in Barton's plea agreement supports Barton's interpretation. The paragraphs preceding the appeal provision deal with certain trial rights that a defendant waives by pleading guilty. For example, the agreement states that although Barton has a right to a jury trial and the right to raise defenses to guilt at trial, she gives up those rights by pleading guilty. *Cf. People v. Lopez,* 148 P.3d at 125 (noting that a guilty plea waives the defendant's right to jury trial and forfeits "the right to appeal issues relating to factual guilt"). The agreement goes on to state that "[t]he entire matter, *except for sentencing,* will be settled once and for all" (emphasis added). The agreement thus makes a temporal distinction between what is being settled by the agreement (guilt), and what remains to be settled (sentencing).

This temporal distinction is evident in the plea agreement's appeal provision as well, which states, "I [Barton] will not be able to appeal any error the judge *has made* in my case. The only thing I can appeal once I plead guilty is an illegal sentence *later im-*

---

**3.** The *Wenzinger* court applied the same distinction to the new version of Crim. P. 35. 155 P.3d at 418. We express no opinion as to how the new version should be interpreted.

*posed by the judge."* (Emphasis added). The appeal provision is drafted in the past tense, referring to errors that the judge *"has made"* rather than any errors that the judge *may* make during Barton's subsequent sentencing. Read in context, the agreement forbids Barton from appealing any error the judge "has made" regarding her guilt, but allows her to challenge an "illegal sentence" that is "later imposed by the judge."

The temporal distinction supports Barton's interpretation because it suggests that in signing the plea agreement, Barton waived her ability to appeal only those legal errors that had already occurred, not those that might occur in the future during sentencing. There is nothing in the agreement that suggests a distinction, such as that contained in the former version of Rule 35, between an "illegal sentence" and a sentence imposed in an unlawful manner. Because there is no indication from the agreement itself that the parties used the term "illegal sentence" as it was used in Rule 35(a), we decline to import that meaning into the agreement. *Cf. State Farm Mut. Auto. Ins. Co. v. Stein,* 940 P.2d 384 (Colo.1997) (refusing to give the term "pedestrian," as it was used in an insurance contract, its statutory definition because there was no indication from the contract that the parties intended to incorporate that definition).

The trial court's advisement confirms that Barton waived her right to appeal legal errors pertaining to guilt, but not those that might be made in the future regarding sentencing. The court told Barton that she was giving up her right to a trial and the right to appeal the jury verdict that would have resulted. The court also informed her, "[Y]ou're giving up your right to remain silent. And for most purposes, when you plead guilty, you give up your right to appeal *the guilty verdict."* (Emphasis added). In sum, the trial court's advisement speaks only to the fact that Barton was waiving her right to appeal the determination of guilt. The advisement contains nothing about her appellate rights with regard to sentencing. Significantly, neither the prosecution nor Barton objected to the court's advisement, suggesting that the parties to the agreement understood the appeal provision to cover issues related to Barton's conviction, but not her sentencing. Therefore, we construe the plea agreement according to "the construction placed upon it by the parties themselves." *Buckhorn Plaster Co. v. Consol. Plaster Co.,* 47 Colo. 516, 529, 108 P. 27, 33 (1910); *see also Johnson,* 999 P.2d at 829 ("Courts have long applied contract principles when interpreting defense and prosecution obligations under plea agreements.").

To be clear, our decision today does not affect the meaning of the term "illegal sentence" for purposes of former Rule 35(a). We hold only that the plea agreement in this case did not use that term in the sense that it is used in the rule. Nor do we make any pronouncements on whether, and to what extent, defendants are permitted to waive their appellate rights under Colorado law.[4]

---

4. While we have never considered the issue of whether a plea agreement can include a defendant's waiver of her right to appeal a conviction or sentence, other courts have held that appeal waivers in plea agreements are valid. Indeed, every federal circuit court that has considered this issue has upheld the validity of appeal waivers. *See, e.g., United States v. Teeter,* 257 F.3d 14, 24–25 (1st Cir.2001); *United States v. Gomez-Perez,* 215 F.3d 315, 318 (2d Cir.2000); *United States v. Wilson,* 429 F.3d 455, 460 (3d Cir.2005); *United States v. Cohen,* 459 F.3d 490, 495 (4th Cir.2006); *United States v. Bond,* 414 F.3d 542, 544 (5th Cir.2005); *United States v. Robinson,* 455 F.3d 602, 610–11 (6th Cir.2006); *United States v. Lane,* 267 F.3d 715, 721 (7th Cir.2001); *United States v. Andis,* 333 F.3d 886, 889 (8th Cir.2003); *United States v. Bibler,* 495 F.3d 621, 624 (9th Cir.2007); *United States v. Hahn,* 359 F.3d 1315, 1318 (10th Cir.2004); *United States v.* *Weaver,* 275 F.3d 1320, 1333 (11th Cir.2001). Several state courts have reached the same conclusion. *See, e.g., People v. Panizzon,* 13 Cal.4th 68, 51 Cal.Rptr.2d 851, 913 P.2d 1061, 1068 (1996); *State v. Murphy,* 125 Idaho 456, 872 P.2d 719, 720 (1994); *State v. Hinners,* 471 N.W.2d 841, 845 (Iowa 1991); *State v. Campbell,* 273 Kan. 414, 44 P.3d 349, 356 (2002); *Geary v. Commonwealth,* 96 S.W.3d 1, 2 (Ky.2001); *Cubbage v. State,* 304 Md. 237, 498 A.2d 632, 635–36 (1985); *People v. Reid,* 420 Mich. 326, 362 N.W.2d 655, 658 (1984); *Petition of Manula,* 263 Mont. 166, 866 P.2d 1127, 1128 (1993); *People v. Ramos,* 7 N.Y.3d 737, 819 N.Y.S.2d 853, 853 N.E.2d 222, 222 (2006); *Ex parte Delaney,* 207 S.W.3d 794, 796–97 (Tex.Crim.App.2006); *Manning v. State,* 122 P.3d 628, 637 (Utah 2005); *State v. Perkins,* 108 Wash.2d 212, 737 P.2d 250, 251 (1987). Additionally, the court of appeals recently recognized the validity of appeal waiv-

Instead, we hold that Barton did not violate her particular plea agreement because that agreement does not waive her right to raise a *Blakely* challenge to her aggravated sentence on appeal. Because Barton did not violate her plea agreement, the prosecution cannot withdraw from it. *Isaacks,* 133 P.3d at 1196.

### III.

Because we hold that the prosecution may not withdraw from its plea agreement with Barton, we make our rule to show cause absolute. We remand this case for further proceedings consistent with this opinion.

ers. *People v. Bottenfield,* 159 P.3d 643, 645     (Colo.App.2006).