The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 3, 2018

**2018COA62**

**No. 16CA0192 People v. Madison — Crimes — Theft; Criminal
Law — Sentencing — Restitution**

Pursuant to an agreement between the defendant and the

prosecution in a theft case, the defendant was permitted to take

possession of the stolen property if he paid restitution to the victims

within a contractual period of time.  The defendant did not pay the

restitution and, five years later, the sheriff's office moved for an

order authorizing it to destroy the stolen property.  Defendant

objected, but the court granted the motion.

On appeal, the defendant argues that he had an ownership

interest in the stolen property based on the Uniform Commercial

Code (UCC) and conversion principles.  A division of the court of

appeals concludes that the disposition of the stolen property is

governed by the agreement, not by the UCC or conversion principles, and that the agreement allowed the sheriff's office to destroy the stolen property when defendant did not pay restitution within the contractual period of time.

COLORADO COURT OF APPEALS                              **2018COA61**

Court of Appeals No. 16CA0192
Jefferson County District Court No. 09CR1101
Honorable Todd L. Vriesman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Edward Madison,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE HARRIS
Taubman and Márquez*, JJ., concur

Announced May 3, 2018

Cynthia H. Coffman, Attorney General, Elizabeth Ford Milani, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Anne T. Amicarella, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Defendant, Edward Madison, appeals the district court's order granting the Jefferson County sheriff's office's motion to destroy evidence associated with Madison's theft conviction.  We affirm.

## I.    Background

¶ 2    Between March 2007 and April 2009, Madison stole scores of bottles of expensive wine from multiple liquor stores in Jefferson County.  The prosecution charged him with three counts of theft ($1000 to $20,000), all class 4 felonies, in violation of section 18-4-401(1), C.R.S. 2017.

¶ 3    In April 2010, Madison pleaded guilty to an added count of attempted theft, a class 6 felony.  In exchange, the prosecution agreed to a sentence of "probation with restitution."

¶ 4    The court sentenced Madison to a two-year term of probation.  As for the restitution, the liquor stores declined to accept the wine recovered from Madison's home because the method of storage could not be confirmed, and therefore the wine was unmarketable.  Instead, the stores sought reimbursement for the retail value of the wine.  Accordingly, the court ordered restitution in the amount of

$16,514.[1]  Police had seized $7000 during the search of Madison's home and that money was distributed to the victims, leaving a restitution balance of $9514.

¶ 5       Contemporaneously with the plea agreement, Madison and the prosecution entered into an "Evidence Disposition Agreement" (Agreement).  The Agreement provided in relevant part:

- "Law enforcement may dispose of all evidence on the attached log except" sixty-seven bottles of wine recovered by police which would be returned to "defendant when restitution [was] paid."

- "Law enforcement shall release" the sixty-seven bottles of wine to the defendant or his lawyer "when restitution [was] paid," but the wine had to be requested "within 90 days" of the date of the Agreement.

- "Defendant understands that the agency may dispose of these items if they are not picked up within 90 days, unless other arrangements are made."

---

[1] That figure included $5600 to a prospective third-party buyer who had agreed to purchase some of the wine.  But after the prospective buyer sent Madison the money, Madison failed to send him the wine.

2

- "The defendant waives any right to further notification before the disposition for the items authorized above."

- "Any disposition will be according to the law enforcement agency's procedures and protocols, which may include returning property to the rightful owner or destruction."

¶ 6    Madison did not pay the outstanding restitution or request the wine within ninety days.

¶ 7    Nearly two years later, in January 2012, Madison's probation officer filed a complaint to revoke his probation, alleging that Madison had pleaded guilty to shoplifting in April 2011.  In addition, though Madison's two-year probationary sentence was set to expire a few months later, Madison still owed $7740 in restitution.

¶ 8    The court revoked Madison's probation, resentenced him to a one-year term of probation, and reimposed the restitution obligation.

¶ 9    In May 2015, five years after Madison signed the Agreement, the sheriff's office moved for an order authorizing the destruction of the wine.  Madison objected, contending that — although he still owed $7540 in restitution — he should be permitted to take

possession of the wine and sell it, then apply the proceeds to his restitution balance. Madison argued that he had "a claim to ownership" of the wine based on the Uniform Commercial Code (UCC) and conversion principles. The court granted the motion, but stayed its order.

¶ 10     On appeal, Madison reasserts his argument that he has an ownership interest in the wine. As a result, he contends, the court should have either permitted him to sell the wine or ordered the sheriff's office to sell it, with any proceeds applied to his restitution obligation. We conclude that disposition of the wine is governed by the Agreement, not by the UCC or conversion principles, and that the Agreement expressly provides for the destruction of the wine under these circumstances.

## II.     Discussion

### A.     Disposition of the Evidence is Governed by The Evidence Disposition Agreement

¶ 11     Madison does not dispute that he entered into the Agreement with the prosecution. Thus, we look to the Agreement to determine whether it specifically allows law enforcement officials to destroy or

otherwise dispose of the wine and whether it provides for an offset against Madison's restitution obligation.

¶ 12     The Agreement between Madison and the prosecution is, like Madison's related plea agreement, a contract. *See People v. Johnson*, 999 P.2d 825, 829 (Colo. 2000); *see also McCary v. People*, 874 P.2d 394, 400 (Colo. 1994) (holding that a defendant is bound by her agreement to pay restitution). So we apply contract interpretation principles to construe the Agreement. *Johnson*, 999 P.2d at 829. In doing so, we seek to effectuate the intent of the parties, focusing on "the meaning a reasonable person would have attached to the agreement under the circumstances." *Id.*

¶ 13     The meaning of the Agreement is a question of law that we review de novo. *Id.*

¶ 14     Pursuant to the plain language of the Agreement, Madison could recover the stolen wine from law enforcement officials (1) "when restitution [was] paid" *and* (2) if the wine was "picked up within ninety days." We conclude that the only reasonable interpretation of the Agreement is that Madison had to both pay the restitution and pick up the wine within ninety days.

¶ 15 If Madison did not pay restitution and pick up the wine before the deadline, the Agreement expressly provided that "law enforcement" (i.e., the sheriff's office) could "dispose of the items" without further notice to Madison. And the "disposition" of the wine could "include . . . destruction."

¶ 16 Madison did not pay restitution or pick up the wine within ninety days. At that point, under the plain and ordinary meaning of the Agreement's terms, the sheriff's office had the right (without seeking approval from the court or notifying Madison) to dispose of the wine. *See People v. Barton*, 174 P.3d 786, 789 (Colo. 2008) (a plea agreement is interpreted according to the plain and ordinary meaning of its terms). Further, no provision in the Agreement gave Madison the right to determine the particular disposition of the wine or to demand that any proceeds from the disposition be distributed to the victims and then applied to reduce his restitution balance. *See, e.g., Janicek v. Obsideo, LLC*, 271 P.3d 1133, 1138 (Colo. App. 2011) (in interpreting a contract, the court may not rewrite or restructure the parties' agreement).

¶ 17 Thus, the Agreement unambiguously gave the prosecution (or the sheriff's office) the right to dispose of the wine in May 2015.

When the terms of the plea agreement or similar contract are unambiguous, we ordinarily enforce the terms as written. *See Craig v. People*, 986 P.2d 951, 961 (Colo. 1999); *see also United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007) ("If the plea agreement is unambiguous as a matter of law, and there is no evidence of governmental overreaching, we should interpret and enforce the agreement accordingly.").

¶ 18     Still, Madison says that by failing to promptly exercise its right to destroy the wine, the prosecution either modified the Agreement or waived any right to enforce the ninety-day deadline. We are not persuaded.

¶ 19     As for the purported modification, Madison does not explain when the Agreement was modified or identify any new rights or obligations of the parties based on the modification. We therefore need not address this contention. *See People v. Diefenderfer*, 784 P.2d 741, 752 (Colo. 1989) (Appellant must "inform a reviewing court both as to the specific errors relied upon and as to the grounds, supporting facts and authorities therefor.").

¶ 20     As for the prosecution's alleged waiver, we acknowledge that a party may waive a contract provision where the party is "entitled to

7

assert a particular right, knows the right exists, but intentionally abandons that right." *Tarco, Inc. v. Conifer Metro. Dist.*, 2013 COA 60, ¶ 33 (citation omitted); *see also Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984) (Conduct implying an intent to waive must be "free from ambiguity and clearly manifest the intention not to assert the benefit.").

¶ 21    However, the circumstances of this case do not fit squarely within the doctrine of waiver.  The purpose of the waiver doctrine is "to prevent the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then either suing for noncompliance or demanding compliance for the purpose of avoiding the transaction."  13 Williston on Contracts § 39:15, Westlaw (4th ed. database updated May 2017) (footnote omitted).  Here, the prosecution neither sued Madison for noncompliance nor demanded compliance as a way to avoid the Agreement.  More importantly, Madison has not alleged, and there is no evidence in the record, that the sheriff's office or the prosecution "lulled" him into a belief that law enforcement officials would store the wine indefinitely on the off chance that he might someday fulfill his restitution obligation.

¶ 22 In any event, even if the prosecution waived the initial ninety-day deadline, and implicitly extended the deadline by five years (a deadline Madison still failed to meet), a new deadline was set at the hearing on Madison's objection to the motion to destroy evidence. *See State of Fla., Dep't of Ins. v. United States*, 81 F.3d 1093, 1096-97 (Fed. Cir. 1996) (nonbreaching party does not waive a deadline if it sets a new deadline for performance "so that the parties will understand when performance is required"). In August 2015, the court essentially re-extended the deadline for an additional thirty days, explaining that if Madison paid the restitution by September 2015 (now, a full sixty-five months after he agreed to pay restitution), he could reap the benefit of the expired Agreement. But Madison did not pay the restitution.

¶ 23 Under these circumstances, we cannot conclude that the prosecution intentionally abandoned any deadline for collecting the restitution and implicitly agreed to store the wine forever.

¶ 24 Accordingly, we must enforce the unambiguous terms of the Agreement. And because Madison failed to satisfy the conditions precedent to his recovery of the wine, he is not entitled to take

possession of the wine or to otherwise dictate the terms of its disposition.[2]

B. The Agreement Did Not Give Madison an Ownership Interest in the Wine and an Ownership Interest Is Not Conferred by Any Statute or Legal Principle

¶ 25 We reject Madison's contention that, notwithstanding his failure to satisfy its requirements, the Agreement gave him an ownership interest in the wine, as did various statutes or legal principles.

¶ 26 Though it almost goes without saying, we emphasize, as a preliminary matter, that "one who steals or converts property to his own use does not thereby acquire title thereto." *Stewart v. People*, 193 Colo. 399, 400, 566 P.2d 1069, 1070 (1977) (quoting *Trustee Company v. Aetna Co.*, 135 Colo. 236, 310 P.2d 727 (1957)); see also *West v. Roberts*, 143 P.3d 1037, 1044 (Colo. 2006) ("A thief has

---

[2] Although Madison has no right to determine the disposition of the property, if, in accordance with its "procedures and protocols," the sheriff's office sells the wine *and* if it distributes the sale proceeds to the victims (because they have not otherwise been compensated for the loss — from, for example, the proceeds of an insurance policy), Madison is entitled to a setoff against the balance of his restitution obligation. § 18-1.3-603(3)(b)(II), C.R.S. 2017; *People v. Stanley*, 2017 COA 121, ¶ 20 (noting the restitution statute does not permit double recovery by the victim).

10

no title and can pass none, not even to a buyer in the ordinary course.").  With that elementary principle in mind, we turn to Madison's arguments.

¶ 27    First, Madison says that the Agreement "effectively became a sales contract" because "the parties agreed that Madison could obtain the property," and "Madison therefore had rights to that property."  As we have discussed, Madison had a right to obtain the property upon the satisfaction of certain conditions precedent.  He did not satisfy those conditions and therefore he did not obtain any right to the wine.

¶ 28    Second, Madison argues that the UCC gave him an ownership interest in the wine.  Madison says that, pursuant to section 4-2-401(2), C.R.S. 2017, he "bec[a]me a buyer of the goods via his restitution order" and that "title passed to Madison upon [the] delivery" of the wine to the sheriff's office.

¶ 29    Section 4-2-401 has no application to this case.  That provision explains when title to goods passes from a seller to a buyer under a contract for sale — "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance" — and notes that any reservation

11

by the seller of the title is limited to a reservation of a security interest. § 4-2-401(2).

¶ 30    Setting aside the fact that the victims are not "sellers" because they relinquished their right to the property by seeking reimbursement from Madison; and setting aside the fact that Madison is not a "buyer" within the meaning of the UCC, *see* § 4-1-201(9), C.R.S. 2017; and, finally, setting aside the fact that even under the UCC, title does not transfer until the seller has delivered the goods to the buyer (which did not occur here), the parties had "otherwise explicitly agreed" in the Agreement that Madison's right to ownership of the wine was contingent on payment of restitution within ninety days. By its own terms, section 4-2-401(2) cannot override the parties' agreement.

¶ 31    Third, the existence of a judgment lien did not give Madison an ownership interest in the wine. We agree that an order for restitution "is a final civil judgment in favor of the state and any victim," § 18-1.3-603(4)(a)(1), C.R.S. 2017, and that the order therefore "creates a lien by operation of law against the defendant's personal property and any interest that the defendant may have in any personal property," § 18-1.3-603(b)(II)(c). But the wine was not

12

Madison's personal property, at least not until he paid for it by fulfilling his restitution obligation.

¶ 32    And finally, Madison did not obtain a property interest in the wine under principles of conversion.  He contends that "a 'judicial sale' was effected pursuant to 4-2-401(2), C.R.S. 2017, passing title to him, when the theft [victims] opted to receive restitution for full value."  Section 4-2-401(2) has nothing to do with judicial sales.  Instead, as Madison noted in the district court, a "de facto" judicial sale is a remedy for the tort of conversion:

> In conversion the measure of damages is the full value of the chattel, at the time and place of the tort.  When the defendant satisfies the judgment in the action for conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale.

Restatement (Second) of Torts § 222A cmt. c. (Am. Law Inst. 1965).  Under conversion principles, title to the wine was not transferred to Madison when the victims sought restitution; rather, ownership would have transferred to Madison only if he had paid for the wine, and thereby reimbursed the victims for their loss.  But he did not.

### III.    Conclusion

¶ 33    The order is affirmed.

JUDGE TAUBMAN and JUDGE MÁRQUEZ concur.